Moises PONCE–GONZALEZ, Petitioner,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.

No. 84–4403.

United States Court of Appeals,
Fifth Circuit.

Nov. 8, 1985.

Enrique Valdez, San Antonio, Tex., for petitioner.

Wm. F. Smith, Atty. Gen., U.S. Dept. of Justice, Robert L. Bombough, Director, Madelyn Elise Johnson, Allen W. Hausman, Office of Immigration and Litigation, Civ. Div., Washington, D.C., for I.N.S.

District Director, I.N.S., San Antonio, Tex., David Lambert, D.D., I.N.S., New Orleans, La., other interested parties.

Before RANDALL, JOHNSON and GARWOOD, Circuit Judges.

## OPINION

GARWOOD, Circuit Judge:

This is an appeal from an order of deportation by the Immigration and Naturaliza-
tion Service ("INS"). Petitioner sought to avoid deportation by collaterally attacking a prior deportation order, seeking thereby reinstatement of the status he allegedly held and was entitled to prior to that earlier finding of deportability for having fraudulently obtained immediate relative immigrant status. We affirm.

### Facts and Proceedings Below

Petitioner Moises Ponce-Gonzalez is a thirty-six-year-old native and citizen of Mexico. He entered this country on September 10, 1971, as an immediate relative immigrant, based upon his marriage, on August 3, 1970, to Amelia Flores ("Amelia"), a United States citizen. On December 31, 1972, he was married in San Juan de Sabinas, Coahuila, Mexico to Bertha Calvillo De Anda ("Bertha"), a citizen of Mexico admitted to this country in 1960 as a permanent resident alien. Their first child, Laura, was born in San Antonio, Texas on January 15, 1974.

On July 25, 1974, petitioner was ordered by the INS to show cause why he should not be found deportable on the basis of an Order to Show Cause charging that he had entered the United States illegally and was an alien who was excludable at the time of entry for having made fraudulent material misrepresentations respecting his immediate relative status.[1] At petitioner's request, a hearing before an Immigration Judge was held the next day. Petitioner admitted all the factual allegations in the show cause order [2] and conceded deporta-
tion that one was excludable at the time of entry.

1. Section 212(a)(19) of the Immigration and Nationality Act ("the Act"), 8 U.S.C. § 1182(A)(19), provides:
 "(a) Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:
 " . . . .
 "(19) Any alien who seeks to procure, or has sought to procure, or who has procured a visa or other documentation, or seeks to enter the United States, by fraud, or by willfully misrepresenting a material fact; . . . ."
 Section 241(a)(1) of the Act, 8 U.S.C. § 1251(a)(1), provides as a ground for deporta-

2. The relevant factual assertions in the 1974 show cause order included allegations that petitioner: (1) was a native and citizen of Mexico; (2) was married to Amelia Flores, a United States citizen, at Seguin, Texas on August 3, 1970; (3) received an approved immigrant visa petition filed by Amelia Flores granting him immediate relative status to obtain an immigrant visa; (4) was admitted into the United States at Eagle Pass, Texas on September 10, 1971 as an immediate relative immigrant based on his marriage to United States citizen Amelia Flores; (5) had never resided with Amelia

bility. Petitioner waived appeal. He requested and was granted voluntary departure. He departed this country to Mexico on July 31, 1974.

Petitioner's first marriage (to Amelia) was annulled on September 23, 1975 by the state district court in Bexar County, Texas. The annulment proceedings were instituted by Amelia, and petitioner, having waived citation, did not appear. Petitioner thereafter, on December 28, 1976, in Mexico, remarried Bertha, who is presently his spouse. Bertha visited him occasionally in Mexico after his departure. They have two more children, also born in this country, Julia Iseia, born June 12, 1975, and Moises, Jr., born August 13, 1977.

Petitioner remained in Mexico from July 31, 1974 until July 15, 1979, when he re-entered this country as a nonimmigrant for pleasure, authorized to remain until September 30, 1979.[3] On October 2, 1979, an Order to Show Cause was issued, alleging petitioner's deportability for having overstayed his visitor's visa. *See* 8 U.S.C. § 1251(a)(2) (§ 241(a)(2) of the Act). At his

subsequent deportation hearing, petitioner admitted the facts in this second order and conceded deportability, subject to his "Motion to Terminate" the deportation proceedings. In that motion, petitioner asserted that the 1974 deportation order was improper because he was allegedly then eligible for relief from deportation by virtue of the provisions of section 241(f) of the Act, 8 U.S.C. § 1251(f), the "forgiveness" section.[4] Petitioner thus sought to avoid the 1979 order of deportation by collaterally attacking the 1974 order of deportation.

The Immigration Judge found that petitioner, who had been represented by counsel in the 1974 proceeding, had not there raised the question of his eligibility for section 241(f) relief, and that petitioner might not now successfully assert the failure of the INS at the prior hearing to *sua sponte* grant that relief. The Immigration Judge also specifically found that, at the time of petitioner's entry into this country in 1971, he was not in possession of a valid labor certificate as required by section 212(a)(14) of the Act.[5] The hearing judge

---

Flores as man and wife; (6) never intended to reside with her as man and wife; (7) never consummated his marriage with her; and (8) entered into the marriage with her solely for the purpose of obtaining immediate relative status.
Section 241(c) of the Act, 8 U.S.C. § 1251(c), provides:
"(c) An alien shall be deported as having procured a visa or other documentation by fraud within the meaning of paragraph (19) of section 1182(a) of this title, and to be in the United States in violation of this chapter within the meaning of subsection (a)(2) of this section, if (1) hereafter he or she obtains any entry into the United States with an immigrant visa or other documentation procured on the basis of a marriage entered into less than two years prior to such entry of the alien and which, within two years subsequent to any entry of the alien into the United States, shall be judicially annulled or terminated, unless such alien shall establish to the satisfaction of the Attorney General that such marriage was not contracted for the purpose of evading any provisions of the immigration laws; or (2) it appears to the satisfaction of the Attorney General that he or she has failed or refused to fulfill his or her marital agreement which in the opinion of the Attorney General was hereafter made for the purpose of procuring him or her entry as an immigrant."

3. The Immigration Judge's opinion recited September 30, 1979 as the pertinent date at which the visa would expire; the Board of Immigration Appeals' opinion, September 20.

4. Section 241(f) of the Act, 8 U.S.C. § 1251(f), as in effect until its amendment in 1981, provided:
"The provisions of this section relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens who have sought to procure or have procured visas or other documentation, or entry into the United States by fraud or misrepresentation shall not apply to an alien *otherwise admissible at the time of entry* who is the spouse, parent, or a child of a United States citizen or of an alien lawfully admitted for permanent residence." (Emphasis added.)

5. Section 212(a)(14) of the Act, 8 U.S.C. § 1182(a)(14), prior to its amendment in 1976, provided:
[T]he following classes of aliens shall be ... excluded from admission into the United States:
"(14) Aliens seeking to enter the United States, for the purpose of performing skilled or unskilled labor, unless the Secretary of Labor has determined and certified to the Secretary of State and to the Attorney General

further found that petitioner's assertion that the INS was estopped from deporting him because of "affirmative misconduct"—its failure to investigate his familial status as allegedly required by its Operations Instructions [6]—was without merit. The Immigration Judge determined that petitioner's current (1979) deportability was supported by "evidence that is clear, convincing and unequivocal." *See Woodby v. INS,* 385 U.S. 276, 87 S.Ct. 483, 484, 488, 17 L.Ed.2d 362 (1966); *cf.* 8 U.S.C. § 1252(b)(4); 8 U.S.C. § 1105a(a)(5). The judge granted voluntary departure, to be accomplished by July 8, 1980, and ordered petitioner deported should he not so depart.

Petitioner timely appealed to the Board of Immigration Appeals ("BIA"), challenging the Immigration Judge's rejection of the collateral attack upon the 1974 order of deportation and his determination that the INS was not estopped from deporting petitioner in 1979 by virtue of its alleged affirmative misconduct. The BIA rejected petitioner's collateral attack on the 1974 deportation order, because, in part, his attack did not address the finding of deportability, but instead dealt with the question of whether relief from deportation had been properly withheld. It found that petitioner had admitted the facts supporting a finding of deportability in 1974, had waived appeal, and had voluntarily departed the country; and that he had not asserted at that time his eligibility for section 241(f) relief, nor borne his burden to prove facts relevant to establishing that eligibility. The BIA concluded, therefore, that no miscarriage of justice had resulted which would have justified collateral attack on the 1974 order; that petitioner's failure to assert his eligibility for section 241(f) relief from deportation, and an absence of any evidence of such eligibility in the 1974 hearing record, precluded a finding that such relief had been wrongly withheld; and that the 1979 charge of overstay had been established by clear, convincing, and unequivocal evidence. The decision of the Immigration Judge was affirmed, and petitioner's administrative appeal was dismissed on February 23, 1984. Petitioner was granted thirty days' voluntary departure, and was ordered deported unless he so departed.

Petitioner timely filed a petition for review with this Court.

### Prior Determination of Deportability

"An order of deportation ... *shall not be reviewed by any court* if the alien has not exhausted the administrative remedies available to him as of right ... or if he has departed from the United States after the issuance of the order." 8 U.S.C. § 1105a(c)

---

that (A) there are not sufficient workers in the United States who are able, willing, qualified, and available at the time of application for a visa and admission to the United States and at the place to which the alien is destined to perform such skilled or unskilled labor, and (B) the employment of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed. The exclusion of aliens under this paragraph shall apply to special immigrants defined in Section 1101(a)(27)(A) of this title (other than the parents, spouses, or children of United States citizens or of aliens lawfully admitted to the United States for permanent residence), to preference immigrant aliens described in section 1153(a)(3) and 1153(a)(6) of this title, and to nonpreference immigrant aliens described in section 1153(a)(8) of this title; ...."

**6.** The INS Operations Instructions, the internal regulations of the INS, provided at the time, in relevant part:

"When an alien described in this section comes to the attention of the Service in any manner, he shall be interrogated and shall be required to submit any necessary documentary evidence to establish his eligibility for the [§ 241(f) ] waiver. *Any necessary investigation shall be conducted to establish nondeportability* under any provision of the Immigration and Nationality Act. If the alien who is found eligible for the benefit of Section 241(f) has been admitted to the United States for permanent residence with an immigrant visa, an order shall be entered on Form I-181. In such instance, the defect in the immigrant visa is regarded as having been cured by an application of the provisions of Section 241(f) and the alien shall be considered as having been lawfully admitted for permanent residence as of the date of that admission...." INS Operations Instructions § 241.2 (emphasis added).

(emphasis added). Petitioner expressly waived his right to appeal the order of the Immigration Judge in 1974, *and* he voluntarily departed the country following the entry of that order.

*No Injustice in the Prior Order*

 Orders of deportation are not ordinarily subject to collateral attack, *see, e.g., United States v. Gonzalez-Parra,* 438 F.2d 694 (5th Cir.), *cert. denied,* 402 U.S. 1010, 91 S.Ct. 2196, 29 L.Ed. 433 (1971), at least in the absence of a "gross miscarriage of justice." *United States ex rel Steffner v. Carmichael,* 183 F.2d 19, 20 (5th Cir.1950). Petitioner alleges that just such a "gross miscarriage" occurred respecting the 1974 order, sufficient to justify a collateral attack. We disagree.

We find no indication that the 1974 order of deportation was improperly entered or that it was contrary to law. Petitioner does not now attempt to attack the finding of *deportability,* which he then conceded, nor to deny any of the facts which supported that finding, which he then admitted. Instead, he seeks to overturn the 1974 deportation order collaterally by alleging that he was, in effect, improperly denied *relief* from deportation to which he was entitled under section 241(f) of the Act.

 The only relief petitioner requested at his 1974 hearing, however, was that he be allowed to depart voluntarily, which was granted. Where a finding of deportability has been made, it is incumbent upon the alien to apply for section 241(f) relief, and to advance factual particulars in support of that application. *See Cortez-Flores v. INS,* 500 F.2d 178, 189 (5th Cir.1974); *Chow v. INS,* 641 F.2d 1384, 1387, 1391 (9th Cir. 1981); *Matter of Fereira,* 14 I & N Dec. 509, 511 (BIA 1973) ("it is the alien who must bear the burden of proof in establishing the applicability of section 241(f) to his case"). Petitioner admits that he did neither at the 1974 hearing, but now asserts that the INS had at that time knowledge of his familial circumstances—his marriage to Bertha and the birth of their United States citizen child, Laura—and was therefore under an affirmative obligation to conduct an investigation in order to determine whether he was eligible for section 241(f) relief.

Petitioner bases this "affirmative duty" argument upon the language of INS Operations Instructions § 241.2. *See* note 6, *supra.* The Operations Instructions are, however, only internal guidelines for INS personnel, and neither confer upon petitioner substantive rights nor provide procedures upon which he may rely. *See Dong Sik Kwon v. INS,* 646 F.2d 909, 918–19 (5th Cir.1981); *Pasquini v. Morris,* 700 F.2d 658, 662 (11th Cir.1983); *see also Velasco-Gutierrez v. Crossland,* 732 F.2d 792, 794–98 (10th Cir.1984). The alleged "failure" of the INS to conduct *sua sponte* an investigation of petitioner's situation thus affords no legal basis for a conclusion that the failure of the Immigration Judge to *sua sponte* accord petitioner section 241(f) relief in 1974 constituted a "gross miscarriage of justice."

Additionally, we note that the language of the relevant Operations Instruction admits to a different and, we think, more appropriate interpretation. The portion of the Operations Instruction upon which petitioner relies (see emphasis in quoted language in note 6, *supra* ) is preceded by a requirement that the alien "shall be required to submit any necessary documentary evidence to establish his eligibility" for any relief from deportation. We think that this language was intended not to imply an affirmative duty to investigate *any* alien to determine his or her eligibility for relief, but only to reflect that, once an alien had asserted eligibility for relief and had alleged factual particulars in support thereof, INS personnel should investigate as required to establish the truth or falsity of those factual allegations. This interpretation is consistent with the rule that the burden of making application for and of offering proof of his eligibility for section 241(f) relief is upon the alien.

Moreover, even were we to agree with petitioner that some substantive duty was implied in this Operations Instruction, we would conclude that, as in *Dong Sik Kwon,* the INS was at worst guilty of "inaction

not misconduct" by not investigating his familial circumstances. 646 F.2d at 918. The 1974 hearing record shows that petitioner, represented by counsel, requested no relief from deportation following the Immigration Judge's inquiry for any requests for relief. The 1974 record is devoid of any indication that petitioner was the parent of a United States citizen child at the time, which, had it been present, might have catalyzed the Immigration Judge to *sua sponte* determine whether section 241(f) relief was warranted.[7] Petitioner was not foreclosed procedurally or otherwise from requesting such relief in 1974 by the failure of the INS to conduct any investigation.

■ In his reply brief in this Court, petitioner alleges ineffective counsel at the 1974 hearing, a matter which is also mentioned in his 1982 brief to the BIA; however, no such claim or showing was ever made before the Immigration Judge or in petitioner's initial brief to this Court. We find no clear demonstration of ineffective counsel. We note specifically that his 1974 counsel had explained to petitioner, for example, the significance of his waiver

---

7. A border patrol officer's May 1974 affidavit, made following his prehearing interview of petitioner, reflects that petitioner mentioned his bigamous marriage to Bertha; there is no mention there—or elsewhere in the record of the 1974 hearing—that petitioner was the parent of a United States citizen child, illegitimate or otherwise. Nor was there mention of Bertha's status as permanent resident alien or otherwise in the affidavit.

At the 1979 hearing, petitioner testified that prior to the 1974 hearing he told the border patrol officer that he was the father of Bertha's United States born child. The officer's above-referenced May 1974 affidavit recites that petitioner stated that the day before he "married" Bertha he told her of his unterminated marriage to Amelia. At the 1979 hearing, petitioner and Bertha testified that Bertha did not become aware of petitioner's then unterminated marriage to Amelia until sometime after the 1972 marriage between Bertha and petitioner. However, neither testified that they so informed anyone in authority in 1974, and, apart from the border patrol officer's May 1974 affidavit, there is no indication in the record of whether petitioner told the officer (or anyone else in authority) in 1974 *anything* respecting whether or not Bertha, when she married petitioner in 1972, was then aware of his unterminated marriage to Amelia.

That petitioner's marriage to Amelia was a sham for purposes of sections 241(c), 8 U.S.C. § 1251(c), and 212(a)(19), 8 U.S.C. § 1182(a)(19), does not mean that it was *void* for state law purposes. *See Skelly v. INS*, 630 F.2d 1375, 1382 (10th Cir.1980). Under Texas law, such a marriage would apparently be only voidable, and would remain valid until annulled. *See* Tex.Fam.Code Ann. § 2.44; *Simpson v. Neely*, 221 S.W.2d 303 (Tex.Civ.App.—Waco 1949, writ ref'd). Since Amelia's marriage was subsisting when petitioner and Bertha "married" in 1972, the 1972 marriage was void. Tex.Fam.Code Ann. § 2.22. Bertha's marriage only became valid in 1975, when Amelia's marriage was annulled, and the annulment did not render Bertha's marriage valid as of any time prior to 1975. *Id.* § 2.22; *Caddel v. Caddel*, 486 S.W.2d 141, 145 (Tex.Civ.App.—Amarillo 1972, no writ). Hence, the 1972 "marriage" to Bertha provides no basis for asserting that petitioner in 1974 was the *spouse* of a United States citizen or alien admitted for permanent residence for purposes of section 241(f). Nor does the marriage to Amelia, as it was a sham. *See* Steel, *Immigration Law* 395 n. 12 (1985) ("The existence of a citizen spouse who is the subject of a sham marriage would not support a § 241(f) application. Matter of Matti, I & N Interim Dec. 2960 (BIA 1984)."); *Skelly, supra.* Indeed, petitioner does not assert otherwise, claiming that section 241(f) was available in 1974 only on the basis that he was then the parent of a United States citizen child, Bertha's daughter, Laura, born in San Antonio on January 15, 1974. It is in effect conceded that petitioner's status, for purposes of section 241(f), as Laura's parent depends on whether under Texas law Laura was legitimate. *See* §§ 101(b)(1)(A) & (C), 101(b)(2), 8 U.S.C. §§ 1101(b)(1)(A) & (C), 1101(b)(2). This, in turn, as petitioner recognizes, depends on whether, at the time of the purported 1972 marriage, either petitioner or Bertha was unaware of the unterminated marriage to Amelia, in which case Laura would have been legitimate in 1974, or whether both petitioner and Bertha, when they purported to marry in 1972, were aware of petitioner's outstanding marriage to Amelia, in which case Laura would not have been petitioner's legitimate daughter in 1974. Tex.Fam.Code Ann. § 12.02(b); Tex.Prob.Code Ann. § 42(d); *United States Fidelity & Guaranty Co. v. Henderson*, 53 S.W.2d 811, 814–16 (Tex. Civ.App.—Amarillo 1932, no writ); *Esparza v. Esparza*, 382 S.W.2d 162, 167 (Tex.Civ.App.—Corpus Christi 1964, no writ). *See also Defferari v. Terry*, 128 Tex. 521, 99 S.W.2d 290 (1936).

We observe that the parties have assumed the applicability of Texas law to the family relationship questions (and no citation to, proof of, or request for notice of Mexican law has been made).

of notice of deportability and his request for a prompt hearing, and that the Immigration Judge himself was at pains to ensure that petitioner understood the nature and significance of the waivers involved and, in general, the nature of the proceedings themselves. And, of course, we are dealing here with a civil, not a criminal, proceeding. We reject petitioner's tardy assertion that his failure to raise section 241(f) eligibility (or to appeal the 1974 order) may be excused on the theory that it was a result of waiver which was neither voluntary nor knowledgeable. *Cf. Jones v. Estelle*, 722 F.2d 159 (5th Cir. 1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 2356, 80 L.Ed.2d 829 (1984).

### The Question of Eligibility for Relief

█ Moreover, it is not established on the record of the 1974 hearing that petitioner was eligible for section 241(f) relief at the time. To be eligible, an alien must allege and show by suitable factual particulars that he was "otherwise admissible at the time of entry." § 241(f). *See* note 4, *supra*. The Immigration Judge noted specifically that petitioner did not possess a labor certificate at the time of his 1971 entry to this country. Such a certificate would ordinarily have been required, had the provisions of petitioner's (fraudulently obtained) immediate relative immigrant visa not waived such a requirement. *See* note 5, *supra*. Under the Supreme Court's decision in *Reid v. INS*, 420 U.S. 619, 95 S.Ct. 1164, 43 L.Ed.2d 501 (1975), as interpreted in *Morales-Cruz v. United States*, 666 F.2d 289 (5th Cir.1982); *Chow v. INS*, *supra*; *Skelly v. INS*, 630 F.2d 1375 (10th Cir.1980); and *Matter of Gonzalez*, 16 I & N Dec. 564 (BIA 1978), petitioner would have been deportable in 1974 under section 241(a)(1), as having been excludable when he entered in 1971 because of the absence of the labor certificate required under section 212(a)(14), and section 241(f) would not have afforded petitioner relief, even if he met its relative status requirements, because he would not have met its "otherwise admissible *at the time of entry*" requirement.[8] The Immigration Judge, however, did not make such an ultimate finding; he

---

**8.** The labor certificate requirement of section 212(a)(14), as then in effect, was subject to exception for spouses or parents of United States citizens. *See* note 5, *supra*. Petitioner's 1971 entry was prior to his initial purported marriage to Bertha and prior to Laura's birth, so no relationship to either of them is relevant in that regard. His marriage to Amelia was a sham, and hence affords no excuse for non-compliance with section 212(a)(14). *Skelly v. INS*, 630 F.2d at 1382. *See also Morales-Cruz v. United States*, *supra*. Petitioner does not contend otherwise. Section 212(a)(14) is applicable only to those who enter "for the purpose of performing skilled or unskilled labor." Petitioner does not assert, and there is nothing in the record to indicate, that he did not enter for such purpose; indeed, the 1974 record indicates that he did enter for such purpose (as reflected by letters in support of his visa application indicating his employment as a brick mason in San Antonio). Petitioner has never claimed that he was exempt from the requirements of section 212(a)(14) when he entered in 1971, his only assertion being that *post*-1971 events brought him within section 241(f).

There is some possible uncertainty as to whether, in order for section 241(f) to be unavailable on account of entry without a labor certificate as required by section 212(a)(14), in a proceeding where deportability is charged under section 212(a)(19), it is necessary that deportability also be charged and established under section 212(a)(14). *Chow v. INS*, 641 F.2d at 1388–91, holds that it is not. On the other hand, language (though not holding) in certain of our opinions points the other way by making the outcome dependent on the section under which charges are brought, from which it could be inferred that section 241(f) would save a deportation sought only under section 212(a)(19) even though it appeared that on entry the alien lacked a labor certificate required by section 212(a)(14), but that the result would be otherwise if the alien were also charged with and found deportable under section 212(a)(14). *See Castro-Guerro v. INS*, 515 F.2d 615 (5th Cir.1975); *Morales-Cruz v. United States*, *supra*. Resolving that uncertainty is not material to the disposition of this case. Here we are not concerned with an appeal from the 1974 deportation, but rather with a collateral attack on it on the purported basis of a claimed "gross miscarriage" of justice. While petitioner was not charged with section 212(a)(14) in 1974, neither did he then raise section 241(f). Under the law as it is now correctly understood, it is clear that the INS could have charged petitioner under section 212(a)(14) and that section 241(f) would not have "forgiven" that ground of deportability. *Cf. Chow v. INS*, 641 F.2d at 1386 (section 212(a)(14) charge added at hearing, apparently after section 241(f) relief requested following initial charge under section 212(a)(19)).

recognized the possible relevancy of the Ninth Circuit's decision in *Castillo-Godoy v. Rosenberg,* 415 F.2d 1266 (9th Cir.1969), which held, in effect, that the section 212(a)(14) requirement of a labor certificate was intended to be waived by section 241(f) in situations involving a finding of deportability based upon excludability under sections 212(a)(14) and 212(a)(19).

Contrary to petitioner's implicit premise on appeal, *this* Circuit was not necessarily bound at the time of petitioner's 1974 hearing by the Ninth Circuit's decision in *Castillo-Godoy.* The Supreme Court later effectively overruled *Castillo-Godoy* by its decision in *Reid. See Cacho v. INS,* 547 F.2d 1057, 1062 & n. 5 (9th Cir.1976); *Chow v. INS, supra.* As *Reid* indicates, there had been vast confusion as to the general scope of section 241(f). 95 S.Ct. at 1170. With regard to the interplay between sections 212(a)(14) and 241(f), in our 1982 decision in *Morales-Cruz* we stated, "[T]his precise issue has not been before this Court." 666 F.2d at 291. We do not accept the suggestion that this Circuit was at the time bound by a Ninth Circuit construction of the law in a context we had not yet ruled on—an interpretation which was later determined to have been in error. We are reluctant to hold that the Board was *bound* to grant relief because of "gross miscarriage" of justice on the basis that petitioner might have benefited from an erroneous theory of law.

### The Estoppel Claim

■ Petitioner asserts that the INS' failure to investigate *sua sponte* to determine petitioner's eligibility for section 241(f) relief constituted "affirmative misconduct" sufficient to now estop the INS from deporting him for his 1979 overstay. We reject this contention for the same reasons that we found such "failure" to investigate insufficient to have caused a "gross miscarriage of justice." Moreover, petitioner's 1979 admitted overstay constituted a violation of the immigration laws wholly distinct from the 1974 charges and attendant hearing.

### Conclusion

Petitioner does not here contest the present finding of deportability because of an overstay, which he has conceded. We reject the attempt to collaterally attack the 1974 deportation order. The Board's decision is AFFIRMED.