2006 UT App 151

**In re the MARRIAGE OF Janice Ririe KUNZ and Richard L. Kunz (deceased).**

**Janice Ririe Kunz, Petitioner and Appellant,**

v.

**Lynne Kunz and Lillie Spencer, Respondents and Appellees.**

**No. 20050374–CA.**

Court of Appeals of Utah.

May 4, 2006.

---

Grant W.P. Morrison and William P. Morrison, Morrison & Morrison LC, Salt Lake City, for Appellant.

Ronald C. Barker, Salt Lake City, for Appellees.

Before Judges BILLINGS, DAVIS, and McHUGH.

OPINION

McHUGH, Judge:

¶ 1 Janice Ririe Kunz (Janice) [1] appeals the trial court's order affirming the domestic commissioner's grant of summary judgment in favor of Lillie Spencer (Lillie) and Lynne Kunz (Lynne). Janice, Lillie, and Lynne each claim to have been a plural wife of Richard L. Kunz (Husband), a practicing polygamist. The issue before the domestic commissioner and the trial court was which of these women was Husband's legal wife. Because we agree that Janice cannot prevail, as a matter of law, we affirm.

1. Because a number of the persons involved in this dispute have adopted the surname Kunz, we refer to the claimants by their first names.

## BACKGROUND

¶ 2 "When reviewing a grant of summary judgment, we are to review the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Hale v. Beckstead*, 2005 UT 24, ¶ 2, 116 P.3d 263 (quotations and citations omitted). We recite the facts of this case accordingly.

¶ 3 This case presents the difficult and complicated issues that arise when followers of the doctrine of plural marriage attempt to circumvent Utah law. Husband and Janice were legally married on June 18, 1953. Sometime thereafter, Husband and Janice decided to embrace the practice of polygamy. To facilitate this decision, in 1961, Husband and Janice divorced and Husband participated in a licensed marriage ceremony with Rachel Kunz (Rachel). Despite Husband and Janice's divorce, the couple continued to reside together, hold property together, and act in all respects as if they were still married.

¶ 4 In May 1994, Rachel passed away, ending the relationship between Rachel and Husband. Just as they had prior to Rachel's death, Husband and Janice continued to act as if they were married. Janice and Husband had two children together. In 1999, approximately five years after Rachel's death, Husband began a conjugal-type relationship with Lillie, but did not participate in a licensed marriage ceremony with her.

¶ 5 On September 17, 1999, Husband participated in a licensed marriage ceremony with Lynne.[2] Just prior to her marriage to Husband, Lynne was a British citizen with a nearly expired visa. Lynne was also engaged in a relationship with another avowed polygamist, Andrew Williams, as one of his plural wives.[3] Because Williams was already legally married to another of his wives, he could not legally marry Lynne to allow her to remain in the United States. Accordingly, Husband married Lynne as a favor, so that she would not be deported.[4] According to Janice, Husband's marriage to Lynne "was done in utter secrecy, without Janice's knowledge." [5]

¶ 6 Following Husband and Lynne's marriage, the couple did not reside together or act in any respect as though they were husband and wife. Rather, Lynne continued in her relationship with Williams. Husband and Janice, on the other hand, continued to maintain a conjugal relationship, hold property together, and act in all respects as if they were married. According to Janice, she and Husband maintained their relationship as husband and wife from their June 18, 1953 wedding date until July 9, 2003, when Husband passed away.[6]

¶ 7 On April 6, 2004, Janice filed a verified petition for judicial declaration of an unsolemnized marriage with Husband. Both Lillie and Lynne were served with a copy of the petition. Before Janice was able to serve the petition on Husband's personal representative, Lillie filed a "Motion for Summary Judgment or to Dismiss." Soon thereafter, Lynne, using the same counsel as Lillie, filed her own "Motion for Summary Judgment or to Dismiss" that asserted the same arguments contained in Lillie's motion. As part of their motions, both Lillie and Lynne requested an award of attorney fees and costs. Janice then filed an affidavit pursuant to rule 56(f) of the Utah Rules of Civil Procedure, seeking an opportunity to engage in discov-

---

**2.** At the time of the marriage to Lynne, Husband continued to maintain conjugal-type relationships with both Janice and Lillie.

**3.** By use of the term "plural wives" in this opinion, we do not mean to suggest that a husband-wife relationship may be legally recognized in Utah between more than one woman and one man. *See* Utah Const. art. I, § 29, art. III. Rather, the term is used to identify the participants' view of the relationship.

**4.** Although Lillie and Lynne contest these factual assertions, we accept them as true for purposes

of evaluating whether summary judgment was proper. *See Hale v. Beckstead*, 2005 UT 24, ¶ 2, 116 P.3d 263.

**5.** Lillie and Lynne were friendly, and Lillie appeared as a witness to the civil marriage between Lynne and Husband.

**6.** At the time of his death, Husband was participating in conjugal-type relationships with Janice and Lillie. Rachel predeceased Husband, and Lynne was living with Williams as one of his plural wives.

ery. *See* Utah R. Civ. P. 56(f). In relevant part, Janice asserted in her rule 56(f) affidavit that discovery was necessary on two issues: (1) "the validity of the solemnized marriage between [Husband] and [Lynne], which marriage appears to have been done largely in secret in an effort to skirt immigration laws and allow Lynne to remain in the United States on an expired visa"; and (2) "whether [Lynne] was already married to another party, Andrew Williams, at the time she purportedly entered into her solemnized marriage with [Husband]." Janice first learned of the civil marriage between Husband and Lynne after Husband's death when Lillie's and Lynne's motions were filed.

¶ 8 A domestic commissioner heard oral argument from the parties and then issued a recommendation (the first recommendation) (1) treating Lillie's and Lynne's motions as motions for summary judgment, rather than as motions to dismiss; (2) concluding that Husband's marriage to Lynne was valid and, therefore, that it foreclosed any possibility that Janice could establish an unsolemnized marriage with Husband; (3) determining, in response to Janice's rule 56(f) affidavit, that further discovery was unnecessary; and (4) granting Lillie's and Lynne's motions for summary judgment. The first recommendation did not award attorney fees or costs to any party.

¶ 9 Janice subsequently filed an objection to the first recommendation with the trial court. Lillie and Lynne filed a response to Janice's objection, in which they requested an award of attorney fees pursuant to Utah Code section 30–3–3, Utah Code section 78–27–56, and rule 11 of the Utah Rules of Civil Procedure. *See* Utah Code Ann. §§ 30–3–3 (Supp.2005), 78–27–56 (2002); Utah R. Civ. P. 11. Although Lillie and Lynne later filed an affidavit in support of this request for attorney fees, they never actually filed an objection to the first recommendation. In response, Janice filed a motion to strike Lillie and Lynne's attorney fee affidavit.

¶ 10 On November 16, 2004, the trial court issued an order affirming the first recommendation. The trial court agreed with the domestic commissioner's determination that, in response to Janice's rule 56(f) affidavit, further discovery was unnecessary. The trial court also stated:

> [E]ven if [Husband] and [Janice] had [an unsolemnized] marriage, their alleged "union" was never legally defined as such prior to [Husband's] 1999 marriage to [Lynne].... Additionally, after 1999, [Husband] did not have the ability to consent to [an unsolemnized] marriage with [Janice] because he was legally married to [Lynne].

Accordingly, the trial court upheld the domestic commissioner's grant of summary judgment in favor of Lillie and Lynne. In essence, both the domestic commissioner and the trial court ruled that further discovery was unnecessary because under any set of facts alleged by Janice, Lillie and Lynne would be entitled to judgment as a matter of law, *see* Utah R. Civ. P. 56(c), because the marriage license and certificate evidencing Husband's marriage to Lynne precluded any unsolemnized marriage claim by Janice.

¶ 11 After the trial court issued its order, a hearing was held before the domestic commissioner on the request for attorney fees. The domestic commissioner then issued a recommendation (the second recommendation) denying Lillie and Lynne's petition for attorney fees. The second recommendation stated that "[t]here [was] technically no motion for attorney fees before the [c]ourt. Attorney fees were not granted at the previous hearing. The proper vehicle would have been to object[ ] to the [first] recommendation[ ] at that time." Lillie and Lynne filed an objection to the second recommendation with the trial court. On March 24, 2005, the trial court issued an order affirming the second recommendation. The trial court stated that Lillie and Lynne's "request ha[d] not been presented to the [c]ourt in the form of a technical motion for attorney fees. Instead the request was presented by way of an affidavit in support of attorney fees, and as part of [Lillie's and Lynne's] initial motion[s] for summary.judgment." The trial court also noted that the first recommendation, which fully adjudicated Lillie's and Lynne's motions for summary judgment, did not award attorney fees to any party. The trial court concluded that if Lillie and Lynne disagreed

with any part of the first recommendation, including the failure to award attorney fees to any party, they were required to file their own objection to the first recommendation with the trial court. Because Lillie and Lynne did not file such an objection to the first recommendation, the trial court concluded that they were "time-barred from doing so." Accordingly, the trial court upheld the domestic commissioner's denial of Lillie and Lynne's request for attorney fees.

¶ 12 Janice filed a notice of appeal on April 20, 2005, challenging the trial court's order affirming the first recommendation, which granted summary judgment in favor of Lillie and Lynne.[7]

## ISSUE AND STANDARD OF REVIEW

¶ 13 Janice argues that the trial court erred by affirming the domestic commissioner's grant of summary judgment in favor of Lillie and Lynne. Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Utah R. Civ. P. 56(c); *Wayment v. Clear Channel Broad.*, 2005 UT 25, ¶ 15, 116 P.3d 271. "We review a summary judgment determination for correctness, granting no deference to the [trial] court's legal conclusions. We determine only whether the [trial] court erred in applying the governing law and whether the [trial] court correctly held that there were no disputed issues of material fact." *Wayment*, 2005 UT 25 at ¶ 15, 116 P.3d 271 (quotations and citations omitted).

## ANALYSIS

¶ 14 Both the domestic commissioner and the trial court ruled that further discovery was unnecessary because under any set of facts alleged by Janice, Lillie and Lynne would be entitled to judgment as a matter of law, *see* Utah R. Civ. P. 56(c), because the marriage license and certificate evidencing Husband's marriage to Lynne precluded any statutory marriage claim by Janice under Utah Code section 30-1-4.5, *see* Utah Code Ann. § 30-1-4.5 (Supp.2005).[8]

---

7. At this point, we address Lillie and Lynne's motion for summary disposition, which we deferred until plenary consideration of this appeal. In that motion, Lillie and Lynne requested that we dismiss Janice's appeal for lack of jurisdiction. They argue that because Janice was appealing the substance of the trial court's November 16, 2004 order affirming the first recommendation, Janice's April 20, 2005 notice of appeal, which was filed more than thirty days after that order, was untimely. *See* Utah R.App. P. 4(a) (providing that a notice of appeal "shall be filed with the clerk of the trial court within [thirty] days after the date of entry of the judgment or order appealed from"). In response, Janice asserts that the November 16, 2004 order was not final and, instead, the only final order for purposes of appeal was the trial court's March 24, 2005 order affirming the second recommendation. Accordingly, Janice maintains that her notice of appeal was timely because it was filed within thirty days of the date of that order.

   We agree with Janice. *See Loffredo v. Holt*, 2001 UT 97, ¶ 12, 37 P.3d 1070 (holding that an order is final only if it "end[s] the controversy between the litigants" and "dispose[s] of the claims of all parties," and that "[a] judgment is not final if the trial court has failed to determine whether attorney fees should be awarded"). Because the trial court's March 24, 2005 order determined that "[n]o attorney fees shall be awarded to [any] party," that order constituted the final order that commenced the thirty-day period contained in rule 4(a). *See* Utah R.App. P. 4(a). Therefore, we conclude that Janice's notice of appeal was timely and deny Lillie and Lynne's request to dismiss Janice's appeal.

8. In its entirety, Utah Code section 30-1-4.5 provides:

   (1) A marriage which is not solemnized according to this chapter shall be legal and valid if a court or administrative order establishes that it arises out of a contract between a man and a woman who:
   (a) are of legal age and capable of giving consent;
   (b) are legally capable of entering a solemnized marriage under the provisions of this chapter;
   (c) have cohabited;
   (d) mutually assume marital rights, duties, and obligations; and
   (e) who hold themselves out as and have acquired a uniform and general reputation as husband and wife.
   (2) The determination or establishment of a marriage under this section must occur during the relationship described in Subsection (1), or within one year following the termination of that relationship. Evidence of a marriage recognizable under this section may be manifested in any form, and may be proved under the same general rules of evidence as facts in other cases.

   Utah Code Ann. § 30-1-4.5 (Supp.2005).

¶ 15 Janice argues that if she is able to establish, through her petition and discovery, the existence of a valid unsolemnized marriage with Husband commencing on the date of Rachel's death, then Husband's marriage to Lynne would be void. *See id.* § 30–1–2(1) (Supp.2005) (providing that a marriage is "prohibited and declared void . . . when there is a husband or wife living, from whom the person marrying has not been divorced").

¶ 16 In their response to this argument, Lillie and Lynne do not contend that Janice did not have an unsolemnized marriage with Husband. Instead, they assert that even if Janice did have such a relationship with Husband, she was required by section 30–1–4.5(2) to bring her petition to establish it within one year of its termination, which Lillie and Lynne assert occurred on the date of Husband's licensed marriage ceremony with Lynne. *See id.* § 30–1–4.5(2) ("The determination or establishment of a marriage under this section must occur during the relationship . . . , or within one year following the termination of that relationship."). Because Janice did not bring her petition within one year of Husband's marriage to Lynne, Lillie and Lynne argue that it is time-barred by section 30–1–4.5(2). Lillie and Lynne further argue that section 30–1–4.5(2) is a statute of repose, rather than a statute of limitations, and therefore, it cannot be tolled by the discovery rule. *See Perry v. Pioneer Wholesale Supply Co.,* 681 P.2d 214, 219 (Utah 1984) ("A statute of repose generally 'set[s] a designated event for the statutory period to start running and then provide[s] that at the expiration of the period any cause of action is barred regardless of usual reasons for "tolling" the statute.' " (alterations in original) (quoting Restatement (Second) of Torts § 899 cmt. g (1979))).

¶ 17 Janice replies that the termination of her unsolemnized marriage to Husband occurred on the date of his death, rather than on the date Husband married Lynne. Because Janice's petition was filed within one year of the date of Husband's death, she

asserts that her petition was timely filed under section 30–1–4.5(2).

¶ 18 Janice also argues that Husband's marriage to Lynne was a sham and was entered into for the sole purpose of allowing Lynne, a British citizen, to remain in the United States.[9] Therefore, she contends that the trial court erred by declaring that marriage valid.

¶ 19 For these reasons, Janice argues that the grant of summary judgment in favor of Lillie and Lynne was improper. We address each of Janice's arguments in turn.

### I. Statute of Limitations or Statute of Repose

¶ 20 As an initial matter, we must determine whether Lillie and Lynne are correct in their assertion that the one-year limitation period contained in section 30–1–4.5(2) is a statute of repose rather than a statute of limitations. The difference between the two was summarized in *Raithaus v. Saab–Scandia of America, Inc.,* 784 P.2d 1158 (Utah 1989), as follows:

> A statute of limitations requires a lawsuit to be filed within a specified period of time after a legal right has been violated. . . . On the other hand, statutes of repose are designed to bar actions after a specified period of time has run from the occurrence of some event other than the injury which gave rise to the claim. Since a statute of repose begins to run from a date unrelated to the injury . . . , it is not designed, as are statutes of limitations, to necessarily allow a "reasonable" time in which to file a lawsuit.

*Id.* at 1160 (citations omitted).

¶ 21 In relevant part, section 30–1–4.5(2) provides: "The determination or establishment of a marriage under this section must occur during the relationship . . . , or within one year following the termination of that relationship." Utah Code Ann. § 30–1–4.5(2). The time limit of section 30–1–4.5 runs from the occurrence of a specific

---

9. Because summary judgment was granted in favor of Lillie and Lynne, we are required "to review the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party," Janice. *Hale v. Beckstead,* 2005 UT 24, ¶ 2, 116 P.3d 263 (quotations and citations omitted).

event—the termination of the relationship, *see id.*—and is not related to any injury or legal right. Therefore, we agree with Lillie and Lynne that the one-year time limit of section 30–1–4.5(2) acts as a statute of repose. Consequently, we hold that the discovery rule cannot operate to toll the one-year limit of section 30–1–4.5(2). *See Perry v. Pioneer Wholesale Supply Co.*, 681 P.2d 214, 219 (Utah 1984).

¶ 22 Although section 30–1–4.5(2) is a statute of repose, we must still determine when the "termination of [the] relationship," Utah Code Ann. § 30–1–4.5(2), between Husband and Janice occurred and the one-year time period commenced. Lillie and Lynne argue that Janice's relationship with Husband terminated on the date that Husband married Lynne and, as a result, Janice was required to bring her petition to establish a valid unsolemnized marriage to Husband within one year of that date. Because Janice did not do so, Lillie and Lynne argue that her petition is time-barred by section 30–1–4.5(2). Furthermore, because the one-year limitation is a statute of repose, the intentional concealment of Husband's marriage to Lynne from Janice cannot preserve Janice's claim under section 30–1–4.5. *See Perry*, 681 P.2d at 219.

¶ 23 In contrast, Janice argues that if she is able to establish the existence of a valid unsolemnized marriage to Husband that predates the licensed ceremony with Lynne, then Husband's marriage to Lynne would be void. *See* Utah Code Ann. § 30–1–2(1). Therefore, Janice contends that the termination of her relationship with Husband did not occur until Husband's death. Because Janice brought her petition within one year of the date of Husband's death, she asserts that it was timely under section 30–1–4.5(2).

## II. Existence of a Valid Unsolemnized Marriage

¶ 24 Janice contends that if she is able to establish, through her petition and discovery, the existence of a valid unsolemnized marriage with Husband commencing on the date of Rachel's death, then Husband's marriage to Lynne would be void. *See* Utah Code Ann. § 30–1–2(1). We conclude that Janice's position is inconsistent with recent Utah Supreme Court precedent.

¶ 25 In *State v. Green*, 2004 UT 76, 99 P.3d 820, the Utah Supreme Court considered the establishment of an unsolemnized marriage under a somewhat similar factual scenario. In *Green*, the defendant, Thomas Arthur Green, was an avowed polygamist. *See id.* at ¶ 2. During the period beginning with his first marriage in 1970 and ending with his final divorce in 1995, Green married multiple women. *See id.* at ¶ 3 n. 4. However, Green "avoided being in more than one licensed marriage at a time by terminating each licensed marriage by divorce prior to obtaining a license for a new marriage. Green then continued his relationships with each of the women he divorced as if no divorce had occurred." *Id.* at ¶ 3 (footnote omitted).

¶ 26 As a result of Green's conduct, the State of Utah (State) filed an information charging him with, among other things, several counts of bigamy. *See id.* at ¶ 7. Prior to the preliminary hearing, the State filed a motion requesting that the trial court recognize, based on section 30–1–4.5, the existence of a valid unsolemnized marriage between Green and one of his plural wives, Linda Kunz. *See id.* Like Husband and Janice in this case, Green and Linda Kunz had been legally married at one point, but had since divorced. *See id.* at ¶ 3 n. 4. In response to the State's motion, the trial court issued a ruling declaring that Green and Linda Kunz were legally married pursuant to section 30–1–4.5. *See id.* at ¶ 8. More specifically, the trial court ruled that as of the date of Green's final divorce in 1995,[10] he and Linda Kunz "were single, were capable of giving consent to be married, and otherwise satisfied the requirements of section 30–1–4.5 for

---

10. In *State v. Green*, 2004 UT 76, 99 P.3d 820, Green married Linda Kunz, divorced her, then subsequently married multiple women. *See id.* at ¶ 3 & n. 4. In each case, Green divorced the wife with whom he had a licensed marriage before he participated in a licensed marriage ceremony with the next wife. *See id.* Green divorced his last licensed wife on November 2, 1995, and had not participated in another licensed marriage ceremony as of the time the State filed its motion to have the trial court recognize the existence of Green's unsolemnized marriage with Linda Kunz. *See id.* at ¶¶ 3,7–8 & n. 4.

creating a valid unsolemnized marriage." *Id.* Accordingly, the trial court found that a valid marriage existed between Green and Linda Kunz as of November 2, 1995, the date of Green's final divorce. *See id.*

¶ 27 After obtaining this ruling from the trial court, the State amended the information filed against Green to alter the charging dates for the bigamy counts so that the beginning month coincided with the commencement of Green's unsolemnized marriage to Linda Kunz. *See id.* at ¶ 9. Green was tried by a jury and convicted of several counts of bigamy based on the fact that he was cohabitating with other women during his marriage to Linda Kunz. *See id.* at ¶¶ 9–10.

¶ 28 Green appealed to the Utah Supreme Court, objecting to, among other things, the State's use of section 30-1-4.5 to establish his marriage with Linda Kunz as a predicate to his bigamy convictions. *See id.* at ¶ 54. Green argued that (1) he did not have notice "that he could be found legally married under section 30-1-4.5 and subsequently prosecuted for bigamy"; and (2) the State's "reliance on section 30-1-4.5 improperly intermingled a civil proceeding with a criminal proceeding." *Id.* The Utah Supreme Court rejected both of Green's arguments. *See id.* at ¶¶ 56–59. With respect to his second argument, the *Green* court stated that "[n]othing in the plain language of the statute or prior cases involving the statute indicates that it would be improper to rely on the statute in any proceeding in which the existence or validity of a marital association is a material issue." *Id.* at ¶ 57. The Utah Supreme Court also noted that "under section 30-1-4.5 ..., a court can find that a valid marriage was previously entered into and lawful as of that time: 'An order entered today may establish that a marriage was contracted and in existence sometime in the past.'" *Id.* at ¶ 8 n. 6 (quoting *Whyte v. Blair*, 885 P.2d 791, 793 (Utah 1994)). Thus, the *Green* court held that the trial court had properly granted the State's motion to establish an unsolemnized marriage between Green and Linda Knuz as of November 2, 1995, the date that he was

single and capable of giving consent to marry. *See id.* at ¶¶ 8,56–59.

¶ 29 In this case, Rachel passed away in 1994, terminating her marital relationship with Husband. Thus, after Rachel's death, Husband and Janice were single and capable of giving consent to be married. *See id.* at ¶ 8. Indeed, Janice and Husband had a relationship with all the indicia of marriage for five years before Husband began simultaneously maintaining a conjugal relationship with Lillie. Subsequently, Husband participated in a civil marriage ceremony with Lynne, but did not conduct himself as if he were married to her. Nevertheless, the domestic commissioner and the trial court concluded that the existence of the marriage license trumped all other claims and that Janice could not prevail on any of the facts alleged. Pursuant to the Utah Supreme Court's decision in *Green* and section 30-1-4.5, we agree that after a valid, licensed marriage, Husband would not be legally capable of entering an unsolemnized marriage under section 30-1-4.5. *See* Utah Code Ann. § 30-1-4.5(1)(b) (providing that an unsolemnized marriage must be "between a man and a woman who ... are legally capable of entering a solemnized marriage under the provisions of this chapter"); *Green*, 2004 UT 76 at ¶ 8, 99 P.3d 820. Janice asserts, however, that Husband's licensed marriage to Lynne was not valid.

### III. Validity of Immigration–Motivated Marriage Under Utah Law

¶ 30 Janice argues that she should have been given an opportunity to prove that the marriage to Lynne was void and, therefore, did not make Husband incapable of entering a solemnized marriage or trigger the running of the statute of repose under section 30-1-4.5. Specifically, Janice contends that Husband's marriage to Lynne was a sham, entered into for the sole purpose of allowing Lynne, a British citizen, to remain in the United States. Janice further alleges that Lynne was engaged in a conjugal-type relationship as a plural wife of Williams both before and after her marriage to Husband and had no intention of entering into a mar-

riage-type relationship with Husband.[11]

¶ 31 This presents the first opportunity for a Utah appellate court to address the issue of the validity of an immigration-motivated marriage under Utah law. The few cases from other jurisdictions that have addressed this issue are not in harmony, taking two basic approaches on the issue. One view treats such marriages as void, while the other treats them as voidable.

¶ 32 The Seventh Circuit has held that sham immigration marriages are void. *See United States v. Lutwak*, 195 F.2d 748, 753–54 (7th Cir.1952), *aff'd*, 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1953). In *Lutwak*, several United States citizens entered into sham marriages with foreign citizens in Paris, France, for purposes of allowing the foreign citizens to come to the United States. *See id.* at 751–52. As a result, the United States citizens were charged with violating federal immigration laws. *See id.* at 751. On appeal from the convictions, the *Lutwak* court addressed the issue of whether the marriages were, in fact, valid. *See id.* at 753–54. The *Lutwak* court stated:

> A sham marriage, void under the law of this country as against public policy, can have no validity.... [A] marriage in jest is not a marriage at all.... [I]f the spouses agree to a marriage only for the sake of representing it as such to the outside world and with the understanding that they will put an end to it as soon as it has served its purpose to deceive, they have never really agreed to be married at all.... *Furthermore a marriage void ab initio is void for all purposes and has no standing in court.*

*Id.* (emphasis added) (quotations and citations omitted). The court also stated that "[u]nder Illinois law, and quite generally in this country, a sham marriage, one in jest, or one intended to be only a pretense is void." *Id.* at 761.

¶ 33 In contrast, the Fifth Circuit has held that sham immigration marriages are voidable. *See Ponce–Gonzalez v. Immigration & Naturalization Serv.*, 775 F.2d 1342, 1347 n. 7 (5th Cir.1985). In *Ponce–Gonzalez*, the defendant appealed from an order of deportation. *See id.* at 1343. The defendant, a citizen of Mexico, had initially entered into the United States as an immediate relative based on his 1970 marriage to Amelia Flores. *See id.* Despite that marriage to Flores, the defendant married Bertha De Anda, a permanent resident alien of the United States, in 1972. *See id.* Their first child was born in San Antonio, Texas, on January 15, 1974. *See id.*

¶ 34 In 1974, the Immigration and Naturalization Service (INS) brought an order to show cause why the defendant should not be deported. *See id.* Specifically, INS alleged that the defendant's marriage to Flores was a sham, that the defendant had never resided with her, never intended to reside with her, never consummated the marriage with her, and entered into the marriage for the sole purpose of obtaining immediate relative status. *See id.* at 1343 n. 2. The defendant admitted the allegations and was deported to Mexico on July 31, 1974. *See id.* at 1343–44.

¶ 35 In September 1975, the defendant's marriage to Flores was annulled, and he then remarried De Anda on December 28, 1976, in Mexico. *See id.* at 1344. Two more children were born to the defendant and De Anda in this country. *See id.* In July 1979, the defendant reentered the United States as a nonimmigrant for pleasure, but overstayed his visa. *See id.* At his second deportation hearing, the defendant attempted to collaterally attack the 1974 deportation order, claiming that his 1972 marriage to De Anda and his status as the father of De Anda's child, who was born in the United States, should have prevented the 1974 deportation.[12] *See*

---

11. There is no dispute that Williams was legally married to another woman at the time of Lynne's licensed marriage to Husband. Thus, for the same reasons that Janice cannot establish an unsolemnized marriage to Husband if his licensed marriage to Lynne is valid, Lynne cannot be deemed married to Williams under section 30–1–4.5 so long as he already has a legal wife.

12. The court in *Ponce–Gonzalez v. Immigration & Naturalization Serv.*, 775 F.2d 1342 (5th Cir. 1985), noted that the relevant section and version of the Immigration and Nationality Act provided for "forgiveness" of a fraudulent entry into the United States if the alien was "otherwise admissible at the time of the entry." *Id.* at 1344 & n. 4 (quotations, citation, and emphasis omitted).

*id.* 1344 & n. 4. The Fifth Circuit disagreed, stating that although a sham immigration marriage was void for purposes of federal immigration law, that "[did] not mean that it was void for state law purposes." *Id.* at 1347 n. 7 (emphasis omitted); *see also Skelly v. Immigration & Naturalization Serv.,* 630 F.2d 1375, 1382 (10th Cir.1980) (holding that status of marriage under state law irrelevant to question of validity for federal immigration purposes); *United States v. Diogo,* 320 F.2d 898, 903 (2d Cir.1963) (same). The *Ponce–Gonzalez* court stated that "[u]nder Texas law, such a marriage would apparently be only voidable, and would remain valid until annulled." 775 F.2d at 1347 n. 7 (citing to relevant Texas statutory provisions). *But see Diogo,* 320 F.2d at 907–08 ("[T]he New York courts have repeatedly held allegedly 'sham' or 'limited purpose' marriages to be neither void nor voidable, and thus to be dissolvable only by a decree of divorce."). Because the marriage to Flores had not been annulled at the time he married De Anda, the defendant could not rely on his marriage to De Anda to challenge his 1974 deportation. *See Ponce–Gonzalez,* 775 F.2d at 1347 n. 7.

¶ 36 The approach taken by the Fifth Circuit appears to be most consistent with the Utah Code provision setting forth the specific types of marriages that "are prohibited and declared void" in Utah. Utah Code Ann. § 30–1–2. Although section 30–1–2 lists the specific types of marriages that are considered void in Utah, a sham immigration marriage is not expressly included as one of them. *See id.*[13] Because the legislature enumerated specific types of marriages that are void under Utah law and failed to include a sham immigration marriage among them, we construe that omission as intentional. *See Tustian v. Schriever,* 2001 UT 84, ¶ 29, 34

P.3d 755 (noting parenthetically the "canon of construction under which the enumeration of specific items in a statute indicates the legislature's intent to exclude other items"); *see also* 2A Norman J. Singer, *Statutes and Statutory Construction* § 47:23 (6th ed., 2000 rev.) (stating that in statutory construction, "where a form of conduct, the manner of its performance and operation, and the persons and things to which it refers are designated, there is an inference that all omissions should be understood as exclusions" (footnotes omitted)); *accord In re Air Crash at Belle Harbor, N.Y.,* Nos. 1448(RWS), 02 Civ. 3161(RWS), 02 Civ. 4755(RWS), 03 Civ. 8322(RWS), 2005 WL 1162448, at *8, 2005 U.S. Dist. LEXIS 8415, at *28 (S.D.N.Y. May 2, 2005) (stating that the failure of the legislature to include immigration-motivated marriages among the enumerated grounds for disqualifying a spouse from recovering wrongful death damages meant spouse could recover, even if the marriage was solely for purpose of obtaining permanent resident status for husband).

¶ 37 Because the Utah Legislature did not include immigration-motivated marriages among those deemed void, we hold that such marriages are merely voidable under Utah law—i.e., valid until nullified. *See Estate of Steffke,* 538 F.2d 730, 736 (7th Cir.1976) ("'A marriage which is merely voidable, however, is valid for all purposes until avoided or annulled in a proper proceeding during the lifetime of the parties.'" (quoting 35 Am.Jur. *Marriage* § 57 (1941)) (other quotations and citation omitted)); *United States v. Sacco,* 428 F.2d 264, 269 (9th Cir.1970) ("The general rule is that a voidable marriage is considered valid until it is annulled, and cannot be collaterally attacked...."). In this case, Janice did not

---

**13.** In its entirety, Utah Code section 30–1–2 provides:

The following marriages are prohibited and declared void:

(1) when there is a husband or wife living, from whom the person marrying has not been divorced;

(2) when the male or female is under 18 years of age unless consent is obtained as provided in Section 30–1–9;

(3) when the male or female is under 14 years of age or, beginning May 3, 1999, when the male or female is under 16 years of age at the time the parties attempt to enter into the marriage; however, exceptions may be made for a person 15 years of age, under conditions set in accordance with Section 30–1–9;

(4) between a divorced person and any person other than the one from whom the divorce was secured until the divorce decree becomes absolute, and, if an appeal is taken, until after the affirmance of the decree; and

(5) between persons of the same sex.

Utah Code Ann. § 30–1–2 (Supp.2005).

challenge the validity of Husband's marriage to Lynne during his lifetime. Therefore, Janice cannot attack it now. *See Estate of Steffke*, 538 F.2d at 736 (" 'On the death of either spouse, [a voidable] marriage cannot be impeached, and is made good ab initio.' " (quoting 35 Am.Jur. *Marriage* § 57 (1941)) (other quotations and citation omitted)).

¶ 38 Because the marriage between Husband and Lynne is valid, Janice cannot prevail under section 30–1–4.5, as a matter of law, both because the statute of repose has run and because Husband was not capable of entering into a solemnized marriage with Janice after his licensed marriage to Lynne.[14]

## IV. Attorney Fees

█ ¶ 39 All parties involved in this case request attorney fees incurred on appeal pursuant to rule 33 of the Utah Rules of Appellate Procedure. *See* Utah R.App. P. 33. Janice asserts that she is entitled to an award of attorney fees because of frivolous motions filed by Lillie and Lynne with this court. We do not agree that those motions were frivolous. In response, Lillie and Lynne maintain that they are entitled to attorney fees on appeal because Janice's appeal is frivolous. We conclude that her appeal is not frivolous, but instead raised an issue of first impression regarding immigration-motivated marriage. Accordingly, we deny both requests for attorney fees on appeal.

## CONCLUSION

¶ 40 The one-year limitation in section 30–1–4.5(2), *see* Utah Code Ann. § 30–1–4.5(2), is a statute of repose that was triggered upon the termination of Janice's relationship with Husband. Because Husband's licensed marriage to Lynne was voidable, not void at its inception, it terminated the relationship between Husband and Janice and began the running of the statute of repose. As a result, Janice's petition to establish an unsolemnized marriage with Husband was not timely filed

and is time-barred under section 30–1–4.5(2). *See id.* Furthermore, upon Husband's marriage to Lynne, he was no longer legally capable of entering into a solemnized marriage with someone other than Lynne and, accordingly, could not satisfy one of the requirements of the unsolemnized marriage statute. *See* Utah Code Ann. § 30–1–4.5(1)(b). Therefore, we hold that Janice cannot prevail, as a matter of law, and we affirm the grant of summary judgment in favor of Lillie and Lynne.

¶ 41 WE CONCUR: JUDITH M. BILLINGS and JAMES Z. DAVIS, Judges.

---

14. We do not condone the marital machinations practiced here by any of the parties. Further, we acknowledge that Janice may have been a true wife to Husband, while Lynne's marriage may be an immigration-motivated sham. Nevertheless, if the marriage to Lynne was merely voidable, it was valid at the time of Husband's death and Janice cannot meet the requirements of section 30–1–4.5, as a matter of law.