2009 UT App 315

**Steve RICHARDS, Petitioner and Appellant,**

v.

**Diana BROWN, Respondent and Appellee.**

**No. 20080682–CA.**

Court of Appeals of Utah.

Oct. 29, 2009.

---

Suzanne Marelius and Tracey M. Watson, Salt Lake City, for Appellant.

Tineke Van Dijk, Midvale, for Appellee.

Before Judges GREENWOOD, THORNE, and McHUGH.

## OPINION

McHUGH, Judge:

¶ 1 Steve Richards appeals the trial court's grant of summary judgment in favor of Diana Brown on Richards's claim that the parties had an unsolemnized marriage pursuant to Utah Code section 30–1–4.5. Richards next challenges the trial court's order, which denied him an interest in the equity in Brown's home and reimbursement for home maintenance expenses Richards incurred while living with Brown. Finally, Richards contends that the trial court improperly denied him the opportunity to conduct adequate discovery by allowing Brown's motion for a protective order. We reverse the order of partial summary judgment on the unsolemnized marriage claim. We affirm the trial court's decision in favor of Brown on the equitable claims and its entry of a protective order.

## BACKGROUND

¶ 2 Richards and Brown lived together in Brown's home [1] from May 1995 to September 2005.[2] Although Richards proposed several times, Brown never accepted, and thus, the parties never married. They have one child (Daughter), who was born in 1996.

¶ 3 Throughout the relationship, the parties maintained separate banking accounts but shared living expenses and costs associated with Daughter. Over the ten-year period, Richards contributed $71,100 to Brown's mortgage, initially paying $400 per month, voluntarily increasing his monthly payment to $550 following the birth of Daughter, and

---

1. Brown purchased the home in 1989 with her ex-husband. As part of the divorce settlement in 1991, Brown paid her ex-husband $11,800 in exchange for his relinquishment of his interest in the home.

2. The trial court found that Richards moved out of Brown's home in either August or September 2005. For purposes of our review of the grant of partial summary judgment, we use the date most favorable to Richards—September 2005.

again voluntarily increasing his payment to $650 in 2003. Brown's monthly mortgage payments varied, starting at $1187 when Richards moved in and increasing to $1516 in 2003.[3] Brown promised to treat Richards fairly and to give him an interest in the home equity. Richards also testified that Brown promised to put his name on the title to the home. Brown conceded that she made these promises but maintained that they were always conditional upon Richards first paying her one-half of the existing equity and contributing to the mortgage and other expenses. Brown never indicated that she thought of Richards as a tenant, and she did not report his monthly payments as rental income on her tax returns.[4] The trial court found Richards's testimony to be more credible than Brown's.

¶4 The parties' remaining household and child expenses were divided evenly. For most expenses, Brown tallied the expenditures bimonthly and presented Richards with a bill for one-half the costs, which he always "paid without question." Occasionally, expenditures were not included in the bimonthly tally, but the parties shared these expenses by alternating who would pay for them. For example, Richards contributed over $10,000 toward significant home improvements, including replacing the deck, installing a swamp cooler and ceiling fan, and setting up a sprinkler system. Richards also owned the only car, which he used for his personal transportation, Daughter's transportation, and family outings and errands. Brown did not have a driver license and did not drive during the relationship.

¶5 After Richards moved out of Brown's home in September 2005, the parties continued to socialize together through December 2005, including celebrating Brown's and Richards's birthdays, Thanksgiving, and Christmas as a family. In October 2005, the parties engaged in mediation to resolve custody issues. The parties also attended an education class for divorcing parents and mailed a letter announcing their "divorce" to family and friends.[5] Although they initially intended to mediate the property distribution, Brown later canceled that mediation. Richards testified that he delayed filing a petition for adjudication of unsolemnized marriage because he believed the parties would either resolve the property dispute through mediation or reconcile.[6] By early 2006, Richards realized that reconciliation was no longer a possibility.

¶6 In December 2006, Richards filed a Verified Petition for Paternity and Related Matters, in which he asked the court to either recognize the parties as married pursuant to the unsolemnized marriage statute, see Utah Code Ann. § 30–1–4.5 (2007),[7] or award him an equitable interest in Brown's home. Brown filed a motion for partial summary judgment on the unsolemnized marriage claim, arguing that Richards filed his petition outside the one-year statute of repose. Following a hearing, the domestic commissioner recommended that Brown's motion for partial summary judgment be granted. The trial court accepted the commissioner's recommendation because a "relationship [for purposes of unsolemnized marriage] is terminated by cessation of the [required element of] cohabitation." The trial court concluded that there was no factual dispute that cohabitation had ended by September 2005, and Richards's petition was filed over a year later.

¶7 The equitable claims were reserved for a bench trial. At trial, Richards testified

3. The mortgage payments adjusted both upward and downward during the ten years of cohabitation. At least two increases were attributable to Brown's equity withdrawals while refinancing the home. Richards did not receive any portion of those withdrawals, and on neither occasion did Brown add his name to the title.

4. The parties filed separate tax returns but strategically allocated exemptions and deductions to maximize their refunds, which they split equally.

5. It is unclear from the record when the parties mailed the letter.

6. Richards was also unaware that he had to file a petition to have their relationship recognized as a legal marriage within one year of the termination of the relationship.

7. We cite to the current codification of Utah Code section 30–1–4.5 because the current version is identical to the version in effect when Richards filed the petition.

that Brown promised as early as September 1996 to put his name on the title of the home. Richards also indicated that at various points during the relationship he "felt insecure about [his] financial position . . . in the family" and that Brown "recognized that [insecurity] . . . and she assured [him] on several occasions that [he could] just take her word for it"—that she would treat him like she did her ex-husband. Yet when Brown twice refinanced the house during the relationship, she did not add Richards to the title. Nevertheless, Richards failed to take any steps to ensure that he was given legal interest in the home.[8]

■ ¶ 8 Richards also presented evidence that he contributed over $12,000 to home improvements and an additional $2000 to home maintenance over the ten-year period. The trial court concluded that Brown had received a benefit equal to the cost of the purchase and installation of the deck, swamp cooler, sprinkler system, and ceiling fan. Accordingly, it ordered Brown to reimburse Richards $10,136 under an unjust enrichment theory. The trial court rejected, however, Richards's additional expenses because it concluded that these expenses were more appropriately categorized as home maintenance expenditures. The trial court declined to reimburse Richards for his home maintenance contributions because these expenses did not enhance the value of the home in such a manner that it conferred "a specific benefit upon [Brown] which in fairness she should be required to repay." Brown asserts that she has paid Richards on that judgment.[9]

¶ 9 With respect to Richards's contributions to the mortgage, the trial court conclud-

ed that Richards failed to establish the amount of the benefit conferred upon Brown, leaving the trial court unable to calculate the appropriate amount Richards should be reimbursed under a theory of unjust enrichment. The trial court likewise concluded that Richards failed to demonstrate the reasonable reliance necessary to support a claim of promissory estoppel. In addition, the trial court denied Richards's claim of promissory estoppel on the grounds that he did not meet his burden of proving the fact and amount of damages. Richards appeals.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 10 The first question before us is whether the trial court erred in determining that the relationship between Richards and Brown terminated, and the statute of repose under the unsolemnized marriage statute was triggered, as of the time that Richards moved out of Brown's home in September 2005. We review questions of statutory interpretation for correctness. *See Jeffs v. Stubbs*, 970 P.2d 1234, 1241 (Utah 1998). We also review the grant of summary judgment for correctness. *See Forsberg v. Bovis Lend Lease, Inc.*, 2008 UT App 146, ¶ 7, 184 P.3d 610, *cert. denied*, 199 P.3d 367 (Utah 2008).

■ ¶ 11 Richards next claims that even in the absence of an unsolemnized marriage, he is entitled to recover his contributions to the mortgage under the equitable theories of unjust enrichment and promissory estoppel. Claims based on equitable doctrines "are mixed questions of fact and law." *U.S. Realty 86 Assocs. v. Security Inv., Ltd.*, 2002 UT 14, ¶ 11, 40 P.3d 586. Accordingly, we defer to a trial court's factual findings unless there is clear error but review its legal conclusions

---

8. Richards also testified that in 1999 or 2000, in response to his repeated requests to be added to the title, Brown brought home paperwork to refinance the house. Richards told her he wanted to think about whether refinancing made financial sense for them. Two days later, the paperwork was "gone." Despite the sudden disappearance of the paperwork, Richards maintained that the fact Brown brought home paperwork "gave [him] confidence that [Brown] was interested in [his] financial position."

9. Brown argues that because she has voluntarily paid the judgment and Richards has accepted it,

the controversy is moot and Richards has waived his right to appeal. *See generally Jensen v. Eddy*, 30 Utah 2d 154, 514 P.2d 1142, 1143 (1973) (discussing general rule of mootness and waiver of appeal once judgment has been voluntarily satisfied). We reject Brown's argument because although Richards does not dispute that he received payment, there is no satisfaction of judgment in the record. *See Hollingsworth v. Farmers Ins. Co.*, 655 P.2d 637, 639 (Utah 1982) (requiring the execution of a satisfaction of judgment to moot a controversy).

for correctness. *See Jeffs,* 970 P.2d at 1244. However, because of the fact-intensive nature of equitable doctrines, we grant the trial court broader discretion in applying the law to the facts. *See id.* at 1245 (giving trial court broad deference when reviewing claim of unjust enrichment); *Department of Human Servs. ex rel. Parker v. Irizarry,* 945 P.2d 676, 678 (Utah 1997) (same for estoppel claim).

■ ¶ 12 We review for an abuse of discretion the trial court's determination that Richards failed to introduce sufficient evidence to establish damages, and we will not overturn the trial court's decision unless there was no reasonable basis for the decision. *See Lefavi v. Bertoch,* 2000 UT App 5, ¶ 16, 994 P.2d 817 ("When a reasonable basis exists for the trial court's [determination of] damages, this court will affirm the [trial court's decision] on appeal."); *Stevenett v. Wal–Mart Stores, Inc.,* 1999 UT App 80, ¶ 11, 977 P.2d 508 ("We review a court's decision to remit a damages award based upon insufficiency of evidence . . . for an abuse of discretion.").

■ ¶ 13 Finally, Richards asserts that the trial court improperly granted Brown's request for a protective order, which limited his ability to conduct discovery. "We review a district court's ruling on a discovery issue for abuse of discretion." *Menzies v. Galetka,* 2006 UT 81, ¶ 59, 150 P.3d 480.

## ANALYSIS

### I. Unsolemnized Marriage

¶ 14 Utah law recognizes an unsolemnized marriage as a legal and valid marriage if a court determines that "it arises out of a contract between a man and a woman" who: (1) are "of legal age and capable of giving consent"; (2) are "legally capable of entering a solemnized marriage under the provisions of [title 30, chapter 1]"; (3) "have cohabited"; (4) "mutually assume rights, duties, and obligations" of marriage; and (5) hold themselves out as husband and wife and have acquired a reputation as such. *See* Utah Code Ann. § 30–1–4.5(1) (2007). However, to have the relationship established as a marriage, a petition for declaration of marriage must be filed with the district court during the relationship described by Utah Code section 30–1–4.5(1) or within one year of its termination. *See id.* § 30–1–4.5(2); *In re Marriage of Gonzalez,* 2000 UT 28, ¶ 30, 1 P.3d 1074 (interpreting subsection (2) of section 30–1–4.5 to require "the *filing* of a petition for adjudication of marriage within one year after the termination of the relationship").

¶ 15 The trial court ruled that Richards's claim under section 30–1–4.5 was barred by the running of the statute of repose. In reaching that decision, the trial court concluded first that the date the parties ceased to cohabit was undisputed and second that the relationship described in section 30–1–4.5 ended on that date. Because the petition to establish an unsolemnized marriage was not filed within one year of the date the parties agree Richards moved out of Brown's home, the trial court granted partial summary judgment in favor of Brown.

### A. There Are No Material Facts in Dispute As to When the Parties Ceased to Cohabit.

¶ 16 Relying on the Utah Supreme Court's decision in *Clark v. Clark,* 2001 UT 44, 27 P.3d 538, Richards challenges the trial court's summary judgment ruling. In *Clark,* the supreme court reaffirmed the holding of *In re Marriage of Gonzalez,* 2000 UT 28, 1 P.3d 1074, that an action to establish an unsolemnized marriage under section 30–1–4.5 "is timely if filed within one year of the termination of the relationship," even if the proceeding to have the unsolemnized marriage legally established is not concluded by that time. *Clark,* 2001 UT 44, ¶ 11, 27 P.3d 538. Richards contends that, in reaching its decision in *Clark,* the supreme court recognized that the definition of cohabitation is not as precise as the one employed by the trial court. Instead, Richards contends that the *Clark* decision acknowledges the reality of conflicts in relationships that may involve temporary separations. *See id.* ¶ 17 (relying on record evidence that established that the parties had a brief period of separation during which the partners continued to spend the night together on occasion, exchanged expressions of love and affection, and shared expenses, as evidence that there was suffi-

cient evidence to support the trial court's finding of cohabitation). Thus, Richards contends that it was inappropriate for the trial court to conclude as a matter of law that cohabitation here ended at the time he moved out of Brown's home. Instead, Richards asserts that he was entitled to put on evidence concerning when cohabitation between these parties ended.

¶ 17 While we agree that the date upon which cohabitation ceases may require a factual inquiry, thereby making summary judgment unavailable, the record reflects that there was no factual dispute raised by Richards on that point in the trial court. To the contrary, Richards concedes in his statement of facts in his response to the motion for partial summary judgment that "[t]he parties have one child together ... and *cohabited* for approximately ten years from May 1995 *until [Richards] moved out of [Brown's] home in approximately September[ ] 2005.*" (Emphases added.) Thus, in this case there were no material facts in dispute on the question of when cohabitation ended. *See generally Giusti v. Sterling Wentworth Corp.,* 2009 UT 2, ¶ 53, 201 P.3d 966 ("When, as here, the moving party 'challenges an element of the nonmoving party's case on the basis that no genuine issue of material fact exists, the burden then shifts to the nonmoving party to present evidence that is sufficient to establish a genuine issue of material fact.'" (quoting *Eagar v. Burrows,* 2008 UT 42, ¶ 15, 191 P.3d 9)). Rather than challenging Brown's assertion that there was no genuine issue of material fact in dispute, Richards conceded the facts that established that cohabitation had ended.

B. The Relationship Terminates upon the Failure of One of the Elements of Section 30–1–4.5(1).

¶ 18 Richards further argues that the termination of one element required for a solemnized marriage under the unsolemnized marriage statute does not determine when the relationship ends. In support of that argument, Richards relies on the legislature's use of the words "termination of that relationship" in subsection (2) of section 30–1–4.5. According to Richards, the use of the word "relationship" indicates that the legislature did not intend for the termination of any one factor to automatically trigger the statute of repose. Rather, he asserts, "a fair reading and application of the statute is to allow a party to establish termination on a case-by-case basis." Richards argues that his position is supported by this court's statement in *Hansen v. Hansen,* 958 P.2d 931 (Utah Ct.App.1998), that "[n]o single factor is determinative" in establishing an unsolemnized marriage, *see id.* at 935. He contends that this must also mean that the absence of one element does not automatically terminate the relationship.

¶ 19 Richards misinterprets our opinion in *Hansen.* Following our statement that "[n]o single factor is determinative," we said, "Evidence of each element is essential [to establish an unsolemnized marriage]." *Id.* In so stating, we recognized that evidence of a single factor is not sufficient, alone, to create a marriage-type relationship for purposes of the unsolemnized marriage statute. *See id.* ("Although 'evidence of general reputation, cohabitation, and assumption of marital rights and duties would be evidence of consent,' such evidence 'standing alone, would not be sufficient.' 'Section 30–1–4.5 requires general reputation, cohabitation, and assumption of marital obligations as separate elements *in addition to* consent.'" (emphasis added) (quoting *Whyte v. Blair,* 885 P.2d 791, 794 (Utah 1994))). Consequently, the *Hansen* opinion does not support Richards's argument that an unsolemnized relationship is not terminated by the cessation of a single element identified by the legislature.

¶ 20 Moreover, Richards's position that the trial court may disregard the absence of one of the subsection (1) requirements is belied by the language of the statute. To have an unsolemnized relationship recognized as a legal and valid marriage, a party must file a petition with the district court either "during the relationship described in Subsection (1), or within one year following the termination of *that* relationship." Utah Code Ann. § 30–1–4.5(2) (2007) (emphasis added). Subsection (2)'s use of the word "that" in the second clause to modify the word "relationship" references the phrase "the relationship de-

scribed in Subsection (1)," which is used in the previous clause. Because "the relationship described in Subsection (1)" is one comprised of five identified factors and joined by the conjunctive "and," *see id.* § 30–1–4.5(1), we conclude that termination of an unsolemnized marriage occurs at the time any one of the statutory factors ceases to exist.[10] *See generally DeLand v. Uintah County,* 945 P.2d 172, 174 (Utah Ct.App.1997) ("We [must] assume the Legislature carefully and advisedly chose the statute's words and phrases."). Indeed, we reached the same conclusion in *Kunz v. Kunz,* 2006 UT App 151, 136 P.3d 1278. *See id.* ¶ 40 (holding that the statute of repose began running when the section 30–1–4.5(1) relationship ceased to exist by virtue of husband's legal inability to enter into a solemnized marriage due to his intervening legal marriage to another).

¶ 21 Our conclusion today establishes a rule from which the deadline for seeking recognition of the relationship can be more easily ascertained in most cases than the case-by-case approach suggested by Richards. And we are not convinced that such an approach is unfair to the participants because "the one-year time limit of section 30–1–4.5(2) acts as a statute of repose" that cannot be tolled. *Id.* ¶ 21. Contrary to Richards's assertions that he had only one year in which to establish the existence of an unsolemnized marriage, either party to the relationship may have it recognized as a legal marriage at any point during the relationship and for one year thereafter. *See* Utah Code Ann. § 30–1–4.5(2); *see also Clark v. Clark,* 2001 UT 44, ¶ 25, 27 P.3d 538 (Wilkins, J., concurring in the result) (noting that "the party seeking to establish the marriage was afforded an opportunity to do so that began when the relationship with [his] partner began, and ended one year after the termination of that relationship"). Thus, Richards had up to eleven years during which he could have had his relationship with Brown recognized as a legal marriage, so long as all the statutory elements were present.

**C. Section 30–1–4.5 Does Not Require the Parties To Be Presently Cohabiting.**

■ ¶ 22 Notwithstanding our conclusion that the parties did not cohabit after Richards moved to a new residence and that the extinguishment of any one factor identified in subsection (1) may render the relief provided by section 30–1–4.5 unavailable, we agree with Richards that partial summary judgment was improperly granted.

■ ¶ 23 In resolving any question concerning the interpretation of a statute, we begin with its plain language. *See Utah Dep't of Transp. v. Ivers,* 2009 UT 56, ¶ 22 ("Our primary goal in interpreting statutes is to give effect to the legislative intent as evidenced by the plain language in light of the purpose the statute was meant to achieve." (emphasis and internal quotation marks omitted)). As discussed, the statute of repose in the unsolemnized marriage act is triggered by the termination of a section 30–1–4.5(1) relationship, which under some circumstances may coincide with the extinguishment of a single element required by subsection (1). However, the express language of the statute anticipates that the element of cohabitation be treated differently.

¶ 24 The unsolemnized marriage statute provides as follows:

(1) A marriage which is not solemnized according to this chapter shall be legal and valid if a court or administrative order establishes that it arises out of a contract between a man and a woman who:

(a) *are* of legal age and capable of giving consent;

(b) *are* legally capable of entering into a solemnized marriage under this chapter;

(c) *have* cohabited;

(d) mutually *assume* marital rights, duties, and obligations;

(e) who *hold* themselves out as *and have acquired* a uniform and general reputation as husband and wife.

---

10. Two of the factors contain requirements expressed in the past tense. *See* Utah Code Ann. § 30–1–4.5(1)(c), (e) (2007). As will be discussed further in part I.C., requirements expressed in the past tense do not technically cease and thus do not automatically terminate the relationship for purposes of triggering the statute of repose.

Utah Code Ann. § 30–1–4.5(1) (2007) (emphases added).

¶ 25 In listing the elements needed to create a relationship that may be established as a legal marriage, the legislature used different verb tenses for certain requirements. *Compare id.* § 30–1–4.5(1)(a)–(b) (requiring that the partners presently be of legal age and capable of entering into a solemnized marriage), *with id.* § 30–1–4.5(1)(c) (requiring only that the couple have cohabited). We assume the legislature used these different verb tenses advisedly. *See Houskeeper v. State,* 2008 UT 78, ¶ 21, 197 P.3d 636 ("[W]hen examining the statutory language, we assume the legislature used each term advisedly and in accordance with its ordinary meaning." (internal quotation marks omitted)). Unlike in *Kunz v. Kunz,* 2006 UT App 151, 136 P.3d 1278, where the husband could not meet the present tense requirement that he be capable of entering into a solemnized marriage, *id.* ¶ 29, the parties here agree that they "have cohabited," *see* Utah Code Ann. § 30–1–4.5(1)(c). That is all that subsection (1) requires. *See id.* Consequently, the date Richards moved out does not, as a matter of law, determine when the relationship terminated by the failure of one of the elements required by section 30–1–4.5(1).

¶ 26 Instead, Richards was entitled to present evidence that, despite his move from the home, the section 30–1–4.5(1) relationship did not terminate until a later date. After the trial court hears the evidence concerning the other elements required by the statute, it must make findings of fact and conclusions of law establishing when the relationship terminated. In doing so, the trial court should consider the legislature's direction found in the express language of subsection (1).[11] If the petition to establish an unsolemnized marriage was filed within one year of that date, Richards is entitled to go forward with his claim under section 30–1–4.5. Because there are material issues of fact in dispute on the question of when the relationship terminated, we reverse the trial court's partial summary judgment decision and remand for further proceedings.

## II. Unjust Enrichment

¶ 27 Even if he cannot establish an unsolemnized marriage, Richards claims he is entitled to compensation under the theory of unjust enrichment.[12] The trial court rejected this theory, concluding that Richards had not established the elements of unjust enrichment. We agree.

### A. Richards Must Establish the Value of Any Benefit Conferred on Brown to Recover Under a Theory of Unjust Enrichment.

■■■■ ¶ 28 To recover on a claim for unjust enrichment,[13] Richards must establish three elements:

(1) a benefit conferred on one person by another; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value.

*Jeffs v. Stubbs,* 970 P.2d 1234, 1248 (Utah 1998) (internal quotation marks omitted). Richards bears the burden of proving each of these elements. *See id.; see also Desert Miriah, Inc. v. B & L Auto, Inc.,* 2000 UT

---

11. For example, the statute requires that the couple "hold themselves out as and have acquired a uniform and general reputation as husband and wife." Utah Code Ann. § 30–1–4.5(1)(e) (2007). The first part of this element is stated in the present tense and joined by the conjunction "and" to the general reputation requirement, which is stated in the past tense. Therefore, to have a relationship that falls within the unsolemnized marriage statute, the parties must presently hold themselves out as married and must have acquired a reputation as such.

12. We do not address Richards's constructive trust or implied contracts arguments because Richards abandoned these claims in the trial court. *See State v. Holgate,* 2000 UT 74, ¶ 11, 10 P.3d 346 ("As a general rule, claims not raised before the trial court may not be raised on appeal.").

13. Unjust enrichment is also known as contract implied in law and is one branch of the doctrine of quantum meruit. *See Emergency Physicians Integrated Care v. Salt Lake County,* 2007 UT 72, ¶ 10, 167 P.3d 1080. The second branch of quantum meruit is contract implied in fact. *See id.*

83, ¶ 13, 12 P.3d 580 ("The plaintiff must prove all three elements to sustain a claim of unjust enrichment.").

¶ 29 "The first element of [unjust enrichment] requires the court to measure the benefit conferred on the defendant by the plaintiff." *Emergency Physicians Integrated Care v. Salt Lake County*, 2007 UT 72, ¶ 26, 167 P.3d 1080; *see also Breitling Bros. Constr., Inc. v. Utah Golden Spikers, Inc.*, 597 P.2d 869, 872 (Utah 1979) (remanding where trial court failed to resolve the essential issue of whether the defendant "ha[d] in fact been [benefitted] by the project carried out by plaintiff"). As explained by the Utah Supreme Court in *Emergency Physicians Integrated Care v. Salt Lake County*, 2007 UT 72, 167 P.3d 1080, "It is not enough that a benefit was conferred on the defendant, rather, the enrichment to the defendant must be unjust in that the defendant received a true windfall or 'something for nothing.'" *Id.* ¶ 26 (quoting 66 Am.Jur.2d *Restitution and Implied Contracts* § 13 (2001)). Furthermore, "[t]he benefit conferred on the defendant, and not the plaintiff's detriment or the reasonable value of its services, is the measure of recovery." *Alpha Partners, Inc. v. Transamerica Inv. Mgmt., LLC*, 2006 UT App 331, ¶ 36, 153 P.3d 714 (internal quotation marks omitted). *But see Emergency Physicians*, 2007 UT 72, ¶ 29, 167 P.3d 1080 (holding that where the benefit is in the form of services, "the measure of damages, by the great weight of authority, is the reasonable value of the services rendered").

¶ 30 Thus, to prevail on his unjust enrichment claim, Richards was required to establish that a benefit was conferred on Brown and that it would be unjust for her to retain that benefit without paying for it. The trial court concluded that Richards "failed to carry his burden of showing, by a preponderance of the evidence, that any portion of the $71,100 in payments he made to [Brown] unjustly enriched her to his detriment." Richards challenges that ruling on appeal, claiming that "unjust enrichment analysis supports an award of equity accumulated over ten years or reimbursement of the $71,100." (Emphasis omitted.) We now discuss each of these theories.

**B. Richards Is Not Entitled to Reimbursement of the $71,100.**

¶ 31 We first consider Richards's position that the entire $71,100 he paid to Brown during the ten years he lived in her home constitutes the amount it would be inequitable for her to retain. As the trial court recognized, Richards received something in return for those payments—a place to live. *See id.* ¶ 26 (stating that a claim of unjust enrichment requires that the defendant receive "a true windfall or something for nothing" (internal quotation marks omitted)). If Richards had not lived with Brown, he would have incurred living expenses elsewhere. Upon review of the evidence before it, the trial court concluded that the amount Richards would have paid in rent over ten years was roughly equal to what he paid to Brown. Consequently, the trial court concluded that Brown was not unjustly enriched as a result of those monthly payments because she provided Richards with a place to live. *See Salzman v. Bachrach*, 996 P.2d 1263, 1265, 1269–70 (Colo.2000) (affirming the appellate court's remand for the offset of any unjust enrichment to unmarried owner of home by the reasonable rental value former partner received while residing in the house).

¶ 32 Our review of the record reveals two possible sources of evidence on this point. First, Brown charged a tenant $300 per month in rent prior to 1995 to reside in the basement of the home she subsequently shared with Richards. Second, Richards paid $750 per month in rent in 2008 for a home in the same neighborhood that is roughly two thirds the size of Brown's house. There was no direct evidence offered as to the actual rental value of Brown's home at any point during the ten years at issue. Consequently, the trial court compared the $300 per month paid to rent Brown's basement prior to 1995 and the $750 per month Richards paid in 2008 for a smaller home, with Richards's payments to Brown, which increased from $400 in 1995 to $650 by 2003.

¶ 33 The record reflects that Richards began residing with Brown in May 1995 and relocated in September 2005—a period of 125 months. Thus, Richards paid an average of

approximately $569 per month during that time. Where there was no more precise evidence in the record, we defer to the trial court's finding that "the amounts [Richards] contributed monthly [we]re in line with what his rental costs would have been if he had rented a house or apartment somewhere close-by to where his daughter was living." On the record before us, we cannot say that the trial court exceeded its broad discretion in finding the amounts paid to Brown roughly equal to the rental value of the home the parties shared. *See generally Jeffs v. Stubbs*, 970 P.2d 1234, 1244–45 (Utah 1998) (recognizing the fact-intensive nature of equitable doctrines and granting the trial court broad discretion).

C. The Evidence in the Record Is Insufficient to Determine the Amount of Any Benefit to Brown in the Form of Increased Equity.

■ ¶ 34 Alternatively, Richards argues that Brown was unjustly enriched because while he paid half the mortgage, Brown retained all of the equity. He further contends that the value of that benefit is equal to half the equity earned during his time living with Brown. Richards bears the burden of establishing both the fact that equity was earned during the relevant time period and the value of any unjust enrichment to Brown. *See Desert Miriah, Inc. v. B & L Auto, Inc.*, 2000 UT 83, ¶ 13, 12 P.3d 580 (requiring that the plaintiff prove each element of unjust enrichment).

¶ 35 Our review of the record reveals no evidence as to the amount of equity in the home in May 1995, when Richards began cohabiting with Brown, or in September 2005, when he moved. Indeed, the only appraisal entered into evidence was obtained in March 2008, two and one-half years after Richards moved out of Brown's home. Although that appraisal concluded that the home was worth $425,000, it provides no

information about what the value of the home was in 1995 and 2005—the dates needed for the calculation of the change in equity during the relevant period.

¶ 36 Richards argues that this gap in the evidence can be filled by extrapolating from the 2008 appraisal. He asserts that his equity interest can be calculated by multiplying the 2008 equity by 0.66 and then dividing that number in half. According to Richards, the 0.66 represents the proportion of Brown's total ownership during which he resided in the home.[14] Under this calculation, Richards asserts that he is entitled to over $91,000 in damages.[15] There are several problems with this approach.

¶ 37 First, even if we were to adopt Richards's methodology, we would reject his 0.66 figure. Although Brown had owned the home for fifteen years when Richards relocated, she continued to own it at the time the 2008 appraisal was prepared. Thus, Richards's ten-year occupancy would need to be compared to the eighteen years Brown owned the property to calculate a percentage that is relevant to the equity existing in 2008. Using those numbers, Richards lived in the home with Brown for 55% of the time Brown owned it as of the time of the 2008 appraisal.

¶ 38 Furthermore, Richards's analysis relies on the assumption that equity rises at a constant rate that never falls or varies. However, home equity is not susceptible to a straight-line calculation. The equity in a home is directly related to the home's value at any given time. Home values are not stagnant, nor do they always increase. Consequently, the calculation of the increase or decrease in equity must be tailored to the specific time period at issue. Brown owned the house for five-and-a-half years prior to and two-and-half-years after Richards's co-occupancy, during which time the value of the home could have rapidly appreciated. Where the evidence necessary to quantify

---

14. Richards claims that Brown owned the home for fifteen years and he resided in her home for ten years. Ten divided by fifteen equals approximately 0.66.

15. The 2008 equity in Brown's home was $277,000. Richards claims the 1995 to 2005

equity can be calculated by multiplying $277,000 by 0.66, which equals $182,820. Because Richards believes he is entitled to half the equity, he divided $182,820 by two to calculate his share as $91,410.

any actual change in equity was absent from the record, the trial court was not required to adopt Richards's assumption of straight-line appreciation. *Cf. Haupt v. Heaps,* 2005 UT App 436, ¶ 14, 131 P.3d 252 (affirming trial court's exclusion of exhibit using straight-line method of calculation where proper measure of damages was the difference between the price of the stock on date of purchase and the price of the stock on date of sale).

¶ 39 In addition, Richards assumes that he paid 50% of the mortgage for the entire ten years he cohabited with Brown. The evidence does not support this assumption. In 1995, Richards paid $400 toward Brown's $1187 monthly mortgage payment. This equates to 34% of the mortgage. Even after Richards raised his monthly payment to $550, Brown's mortgage obligation was $1500. Thus, for that period, Richards made a 37% contribution to the mortgage. In 2003, Brown's mortgage payment was $1516 and Richards was paying her $650. At that time, Richards was paying Brown 43% of the monthly mortgage obligation. While we acknowledge that the amount of the mortgage fluctuated in part due to Brown's refinancing transactions, the record contained no formula to determine the amount of any unjust enrichment.

¶ 40 Richards argues that the evidence is good enough for a claim in equity. While we agree with Richards that "[u]njust enrichment must remain a flexible and workable doctrine," *Jeffs v. Stubbs,* 970 P.2d 1234, 1245 (Utah 1998), that flexibility does not excuse the plaintiff from establishing that, in fact, the defendant has been unjustly enriched in some calculable amount. For example, in *Highland Construction Co. v. Union Pacific Railroad Co.,* 683 P.2d 1042 (Utah 1984), the supreme court affirmed the trial court's verdict of no cause of action where the plaintiff failed to quantify its damages. *See id.* at 1044, 1052. The plaintiff had attempted to rely on a total costs theory of damages, arguing that it was entitled to its total expenditures on a construction job minus the amounts already received. *See id.* The trial court refused to admit the total costs evidence because it was not tied to any

specific wrongful conduct of the defendants and the plaintiff provided no other evidence of damages at trial. *See id.* at 1045. Consequently, the trial court ruled against the plaintiff due to a failure of proof on damages. *See id.*

¶ 41 On appeal, the *Highland Construction* plaintiff argued that the damages should have been adequate for its causes of action, including a claim for quantum meruit. *See id.* The supreme court rejected this argument, stating,

It is true that some degree of uncertainty in the evidence of damages will not relieve a defendant from recompensing a wronged plaintiff. However, it is also a general rule of long standing that a plaintiff must show damages by evidence of facts and not by mere conclusions, and that the items of damage must be established by substantial evidence and not by conjecture.

*Id.* (citations omitted). On the face of this record, the trial court did not exceed its discretion in refusing to quantify the benefit to Brown without substantial evidence.

¶ 42 Nor are we convinced that the decisions from other jurisdictions upon which Richards relies hold otherwise. In *Tolan v. Kimball,* 33 P.3d 1152 (Alaska 2001) (per curiam), the Alaska Supreme Court, applying its standards for cohabiting couples, enforced the intent of the parties to share the equity in their residence equally. *See id.* at 1154–55. The court was able to determine the amount of that award, however, because there was evidence in the record that during the period of cohabitation, "the property's [net] value increased from $66,000 to $168,000." *Id.* at 1153; *see also Ulrich v. Zemke,* 2002 WI App 246, ¶¶ 4–6, 10, 258 Wis.2d 180, ¶¶ 4–6, 10, 654 N.W.2d 458, ¶¶ 4–6, 10 (approving use of unjust enrichment theory to assess the rights of a formerly cohabiting couple where the record contained specific values for the various properties at issue during the relevant time period).

¶ 43 Richards also relies on *Salzman v. Bachrach,* 996 P.2d 1263 (Colo.2000), wherein the Colorado Supreme Court held that the fact of cohabitation does not bar a suit in equity. *See id.* at 1269. In reaching that conclusion, the *Salzman* court cautioned,

[C]ohabitation and sexual relations alone do not suspend contract and equity principles. We do caution, however, that mere cohabitation does not trigger any marital rights. A court should not decline to provide relief to parties in dispute merely because their dispute arose in relationship to cohabitation. Rather, the court should determine, as with any other parties, whether general contract laws and equitable rules apply.

*Id.* at 1268–69 (footnote omitted); *see also Flood v. Kalinyaprak,* 2004 MT 15, ¶¶ 20–21, 319 Mont. 280, ¶¶ 20–21, 84 P.3d 27, ¶¶ 20–21 (rejecting divorce analysis and using partition action to divide property owned as tenants in common by unmarried former cohabitants). We see nothing in the cases cited by Richards that would have required the trial court to accept the damage theory advanced simply because Richards asserted equitable claims.[16]

**D. Brown Was Not Unjustly Enriched by Richards's Contributions to Routine Maintenance.**

 ¶ 44 Richards also argues that Brown was unjustly enriched by his contributions to home maintenance during the time they cohabited. We disagree. The maintenance expenses did not materially benefit Brown by enhancing the overall value of the home. *See Emergency Physicians Integrated Care v. Salt Lake County,* 2007 UT 72, ¶ 26, 167 P.3d 1080 (noting that unjust enrichment requires that a defendant receive more than an incidental benefit). Furthermore, while maintenance was part of the necessary expense of occupying the home, the improvements paid for by Richards added to its future value. *See generally Bettinger v. Bettinger,* 793 P.2d 389, 393 (Utah Ct.App.1990) (defining improvements as those that "add to the value of or enhance the marketability of the home" and maintenance as activities that are necessary for maintaining a home but do not enhance its overall value). Thus, Brown and Richards shared equally in the benefit from the maintenance expenses while living together in the home. In contrast, Brown continues to enjoy a benefit from the improvements long after Richards vacated the premises. We agree with the trial court that Brown has been unjustly enriched by the improvements but not by the routine maintenance expenses.

## III. Promissory Estoppel

 ¶ 45 Richards argues that the doctrine of promissory estoppel also entitles him to an interest in the home equity. Promissory estoppel is "employed where injustice can be avoided only by enforcement of the promise." *Hess v. Johnston,* 2007 UT App 213, ¶ 22, 163 P.3d 747. To make a claim of promissory estoppel, proof of four elements must be shown:

(1) [Richards] acted with prudence and in reasonable reliance on a promise made by [Brown]; (2) [Brown] knew that [Richards] relied on the promise which [Brown] should reasonably expect to induce action or forbearance on the part of [Richards] . . .; (3) [Brown] was aware of all material facts; and (4) [Richards] relied on the promise and the reliance resulted in a loss to [him].

*Youngblood v. Auto–Owners Ins. Co.,* 2007 UT 28, ¶ 16, 158 P.3d 1088 (internal quotation marks omitted).

¶ 46 The trial court found that Brown, with knowledge of all material facts, made a promise to Richards to "treat him equitably," "that is, he would get an interest in his contribution to the home." However, the trial court concluded that Richards failed to meet his burden in proving the other two elements. First, the court said, "[Richards] has not shown he acted with prudence and in reasonable reliance . . . [on Brown's] promise [to add Richards to the title]" because Brown had twice refinanced the home without adding Richards's name to the title and Richards had never taken serious initiative to have his name added. The trial court further concluded that even if Richards had reasonably relied, he did not show any detriment as a

**16.** Because we hold that the trial court did not exceed its discretion in finding that Richards did not quantify the value of any benefit to Brown, we need not address the other elements of unjust enrichment.

result of that reliance. Richards challenges both conclusions on appeal.

¶ 47 Even if we were to assume that Richards's reliance on Brown's promise was reasonable, he still must prove damages to prevail on a claim of promissory estoppel. *See Andreason v. Aetna Cas. & Sur. Co.*, 848 P.2d 171, 176 (Utah Ct.App.1993) ("An award of damages [on promissory estoppel] requires that a plaintiff prove the fact of damages by a preponderance of the evidence...."). "Damages in promissory estoppel are limited to those which are sustained because the plaintiff[ ] ha[s] changed [his] position to [his] detriment in reasonable reliance upon the defendant's representation." *Id.* at 175. Generally, a promise binding under promissory estoppel is enforced by awarding the plaintiff his expectation damages. *See* Restatement (Second) of Contracts § 90 cmt. d (1981) ("[F]ull scale enforcement by normal [contract] remedies is often appropriate."); *id.* § 347 (stating that the general measure of damages for breach of contract is the expectation interest); *see also Alta Health Strategies, Inc. v. CCI Mech. Serv.*, 930 P.2d 280, 284–85 (Utah Ct.App.1996) ("According to Utah contract law, ... damages [for breach] are properly measured by the amount necessary to 'place the nonbreaching party in as good a position as if the contract had been performed.'" (citation omitted)). Sometimes, the more equitable remedy under a theory of promissory estoppel is reliance damages, or damages to return the plaintiff to the position the plaintiff enjoyed before relying on the promise. *See* Restatement (Second) of Contracts § 90 cmt. d & illustrations (1981). The correct measure of damages in a particular case is a question of law. *See Lysenko v. Sawaya*, 2000 UT 58, ¶ 23, 7 P.3d 783. Accordingly, we consider whether Richards proved his damages under both the expectation and reliance measures.

A. The Record Does Not Support an Award of Expectation Damages.

¶ 48 If damages were calculated based on Richards's expectation, he would be entitled to the value of the promise made, that is, a fair interest in the equity. Due to the equitable nature of promissory estoppel, the calculation of damages may be more flexible than in typical contract cases. *See Andreason*, 848 P.2d at 175–76, 178 (requiring damages to be based on a "case by case calculation").

¶ 49 Despite the inherent flexibility in promissory estoppel cases, damages still must be proved "with reasonable certainty." Restatement (Second) of Contracts § 352 (1981). The amount of damages need not be established "with precision," *Bastian v. King*, 661 P.2d 953, 956 (Utah 1983), but, at a minimum, "[Richards must] prove the fact of damages by a preponderance of the evidence and the amount of damages by approximations and projections that rise above mere speculation," *Andreason*, 848 P.2d at 176; *accord* 11 *Corbin on Contracts* § 56.16 (2005) ("In order to be entitled to ... damages ..., the plaintiff must lay a basis for a reasonable estimate of the extent of harm caused by the breach.").

¶ 50 A brief review of the case law demonstrates this distinction. In *Andreason v. Aetna Casualty & Surety Co.*, 848 P.2d 171 (Utah Ct.App.1993), for example, the court upheld an award of damages on the plaintiffs' promissory estoppel claim. *See id.* at 178. There, the plaintiffs sued their insurance company for failing to pay for repairs that the insurance company had instructed them to make. *See id.* at 173–74. At trial, the plaintiffs presented detailed evidence of the amount of damages by "meticulously testif[ying] from ... personal written records of expenses," which detailed the costs associated with the specific items that, as instructed, the plaintiffs discarded and replaced rather than repaired. *Id.* at 176. This court held that the plaintiffs introduced "sufficient evidence to allow the [fact-finder] to determine an entitlement to promissory estoppel damages *and to calculate their value.*" *Id.* (emphasis added).

¶ 51 On the other hand, in *Atkin Wright & Miles v. Mountain States Telephone & Telegraph Co.*, 709 P.2d 330 (Utah 1985), the plaintiff failed to meet his burden of showing the amount of damages where he only provided information on his business's lost gross income instead of its lost net income. *See id.* at 336. The supreme court held that "[p]roof

of loss of gross income only is an insufficient foundation for proof of amount of damages" and that, while the gross figures may have proven the fact that damages existed, the net income figures were necessary for the court to approximate the actual amount of damages. *See id.*

¶ 52 Here, as noted earlier, Richards introduced evidence as to the market value and equity that existed in the home in 2008, but the record contained no evidence of the equity at the time he moved into the home in 1995 or when he moved out in 2005. Without those parameters, it is impossible to determine the equity earned during the years Richards contributed to the mortgage. Even if the 2008 estimate of the home's value and equity had been sufficient to prove that damages actually occurred, it does not establish an appropriate measure of the *amount* of damages. *See id.* At best, the 2008 estimate gave the trial court a gross value from which to begin. *See id.* But, as previously discussed, home values do not appreciate on a straight line, and they may even decrease. Therefore, without any evidence of the change in home equity from 1995 to 2005, the trial court lacked the net value it needed to approximate or calculate the amount of Richards's damages. Without that evidence, we cannot hold that the trial court exceeded its discretion in concluding that Richards did not establish the amount of expectation damages to which he would have been entitled.

B. The Record Does Not Support an Award of Reliance Damages.

¶ 53 Alternatively, if Richards were entitled to reliance damages, he would receive compensation sufficient to return him to the same position he would be in had he not relied upon Brown's promise. *See* Restatement (Second) of Contracts §§ 344, 349 (1981). Damages would be limited to the amount Richards expended in reliance on Brown's promise, less any loss that Richards would have avoided if Brown had fully performed her promise. *See id.* § 349; *see also Andreason v. Aetna Cas. & Sur. Co.,* 848

P.2d 171, 176 (Utah Ct.App.1993) ("Damages in promissory estoppel are limited to those which are sustained because the plaintiff[ ] ha[s] changed [his] position to [his] detriment in reasonable reliance upon the defendant's representation."). In other words, Richards's compensation would equal the difference between what he paid on Brown's mortgage and what he would have paid to live somewhere else. As discussed above, the trial court compared the rental value of Brown's property and the home Richards rented after the parties ceased cohabiting and concluded that the amount Richards would have paid in rent over ten years was roughly equal to what he paid to Brown.

¶ 54 Richards maintains that he is nevertheless entitled to any equity he would have earned had he used the $71,100 to purchase his own home instead of paying Brown. Richards might be entitled to that equity under a reliance theory upon an appropriate record. However, as the trial court held, Richards failed to meet his burden of providing the court with evidence sufficient to calculate how much that equity might be. There is no evidence in the record showing the value of any home Richards could purchase; what the total amount of that mortgage would be; what the interest rate, monthly payments, and other terms of such a mortgage would be; or any other facts that would show how much equity Richards could have earned under his own mortgage.[17] As a result, the trial court lacked any figures that would have allowed it to approximate his reliance damages based on how much his hypothetical equity might be. *See generally Andreason,* 848 P.2d at 176 (holding that the plaintiff has the burden of showing "the amount of damages by approximations and projections that rise above mere speculation"). Therefore, the trial court did not exceed its discretion in holding that Richards did not meet his burden of establishing his reliance damages. Thus, because Richards failed to prove either expectation or reliance damages, we agree with the trial court that

---

**17.** The trial court would also have to assume that Richards would have actually purchased his own home if he had not relied on Brown's promise.

he did not establish a claim of promissory estoppel.[18]

## IV. Protective Order

¶ 55 Richards's final argument is that the trial court exceeded its discretion in granting the protective order that limited his ability to conduct discovery. The trial court granted the protective order for two reasons. First, "the discovery was propounded in violation of Utah [Rule of Civil Procedure] 26(d)." Rule 26(d) prohibits a party from "seek[ing] discovery . . . before the parties have met and conferred as required by [Rule 26(f)]." Utah R. Civ. P. 26(d). Under rule 26(f), Richards's counsel was responsible for scheduling the meeting. *See id.* R. 26(f). At the time Richards served Brown with his discovery requests, his counsel had neither met with Brown's counsel nor scheduled such a meeting. Further, even after the court's express directive to Richards's counsel to submit a scheduling order, counsel never did so.

¶ 56 Second, the trial court noted that trial was less than two weeks away and that Richards had submitted a Certificate of Readiness for Trial one year earlier. In this certificate, Richards's counsel stated, "Counsel has completed all discovery." *Cf. McNair v. Farris,* 944 P.2d 392, 396 n. 5 (Utah Ct.App. 1997) (refusing to consider the plaintiff's argument that he could survive summary judgment had the trial court allowed him more time to conduct discovery when the plaintiff had previously filed two certificates indicating that all discovery was complete). Under

the facts of this case, we decline to conclude that the trial court exceeded its discretion in granting the protective order.[19] Accordingly, we affirm on this issue.

## CONCLUSION

¶ 57 An unsolemnized marriage requires that each of the five statutory elements be present. The plain language of the statute requires only that the couple have cohabited at some time. Consequently, termination of the section 30–1–4.5 relationship here may not have been coextensive with the date Richards moved out of Brown's home. Because there are material, disputed facts as to when the section 30–1–4.5 relationship terminated that must be resolved to determine whether Richards's claim is barred by the statute of repose, we reverse the trial court's entry of partial summary judgment. With respect to Richards's equitable claims, we affirm the trial court's ruling in favor of Brown because the record is inadequate to prove damages. Finally, we affirm the entry of the protective order.

¶ 58 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge, and WILLIAM A. THORNE JR., Judge.

18. Because we affirm the trial court's conclusion that Richards failed to prove damages, we need not consider whether he reasonably relied on Brown's promise.

19. Nothing in this opinion, however, should be interpreted to limit the trial court's discretion in allowing additional discovery on the unsolemnized marriage claim, if it determines such discovery is appropriate.