**2015 UT App 299**

## THE UTAH COURT OF APPEALS

EXPRESS RECOVERY SERVICES INC.,
*Appellee,*
*v.*
RICHARD REULING JR. AND MARGARET REULING,
*Appellants.*

Memorandum Decision
No. 20141032-CA
Filed December 17, 2015

Third District Court, West Jordan Department
The Honorable Mark S. Kouris
No. 120416434

Edward T. Wells and David D. Bennett, Attorneys
for Appellants

Edwin B. Parry and Joshua R. Dunyon, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Memorandum
Decision, in which JUDGES JAMES Z. DAVIS and J. FREDERIC
VOROS JR. concurred.[1]

CHRISTIANSEN, Judge:

¶1    Richard Reuling Jr. and Margaret Reuling (collectively,
Appellants)[2] appeal from the trial court's judgment in favor of
Express Recovery Services Inc. (ERS). We affirm.

---

1. Judge James Z. Davis participated in this case as a member of
the Utah Court of Appeals. He retired from the court on
November 16, 2015, before this decision issued.

2. When referring to Appellants individually, we use their first
names for clarity.

¶2    In 2011, Richard was involved in a serious car accident, after which he was transported to the University of Utah Health Care (UUHC) emergency room.[3] Richard was admitted to the hospital, and over the course of the next three days, UUHC providers treated him by performing numerous medical procedures on him.[4]

¶3    After Richard was discharged, UUHC began to bill Appellants for the medical care and treatment that had been provided to Richard. Appellants failed to make any payments toward the amount owed to UUHC. Eventually, UUHC assigned its accounts receivable relating to Richard's care to ERS. ERS made numerous attempts to collect on the debt owed, but Appellants failed to make any payments.

¶4    In August 2012, ERS sent Appellants a demand letter, listing $27,600.78 as the remaining balance of the accounts. Again, Appellants failed to make any payments on the accounts, and they did not attempt to establish a payment plan with ERS. In December 2012, ERS filed suit to collect the owed debt.

¶5    Though Appellants admit that they are liable for the cost of Richard's care at UUHC, they challenge the amount that ERS claims will satisfy the debt. The parties went to trial on the issue of damages, at which trial Appellants claimed that "the hospital's bills are difficult to understand and potentially contain errors." Appellants also claimed that "the hospital . . . failed in its duty to provide accurate and understandable billing

---

3. "On appeal from a bench trial, we recite the facts in the light most favorable to the trial court's factual findings." *Jacob v. Bate*, 2015 UT App 206, ¶ 2 n.1, 358 P.3d 346.

4. Under the Emergency Medical Treatment and Active Labor Act, UUHC was required to treat Richard, who was unresponsive when he arrived at the UUHC emergency room. *See* 42 U.S.C. § 1395dd(b)(1)(A) (2012).

statements and, based upon this, [Appellants] should not have to pay them." At the close of evidence, Appellants moved for a directed verdict, which the trial court denied. On June 9, 2014, the trial court issued a minute entry ruling, wherein it found that "all of the charges are reasonable and customary for the services provided, and are presented with the requisite detail to provide the payer sufficient understanding." The court then ruled for ERS in the amount of $25,742.00, plus statutory interest in the amount of $1,153.00, for a total judgment of $26,895.00. Based upon this minute entry ruling, the trial court entered judgment in ERS's favor on June 27, 2014. Three days after the court rendered judgment, Appellants filed a motion to amend the findings and judgment under rules 52(b) and 59(a) of the Utah Rules of Civil Procedure. The trial court denied the motion. Appellants appeal the denial of that motion.

¶6     As a preliminary matter, ERS contends that we lack jurisdiction to consider this appeal because the trial court deemed Appellants' motion to amend the findings and judgment to be a motion to reconsider, "which would not toll the time period for [Appellants] to file their appeal." Appellants filed their motion to amend the findings and judgment on June 30, 2014. ERS opposed the motion. On September 18, 2014, the trial court entered an order denying Appellants' motion. According to ERS, at a September 2, 2014 hearing on Appellants' motion, the trial court found Appellants' motion to be, in substance, a motion to reconsider. However, the recording of the September 2 hearing is not included in the record on appeal, and the court's September 18 order does not mention anything about Appellants' motion being a motion to reconsider. ERS filed a motion to correct the order on September 18, 2014, "to accurately reflect the decision made by the Court on September 2, 2014." On October 31, 2014, the trial court entered an order correcting its September 18 order, in which the trial court stated that "[Appellants'] Motion for Amendment of Findings and Judgment is actually a Motion to Reconsider and the Court having ruled previously, [the] motion is DENIED."

¶7    Pursuant to rule 4(b) of the Utah Rules of Appellate Procedure, the time for filing an appeal from a final judgment is tolled by the timely filing of certain postjudgment motions, including a motion to amend or make additional findings of fact under rule 52(b) of the Utah Rules of Civil Procedure or for a new trial under rule 59(a) of the Utah Rules of Civil Procedure. Utah R. App. P. 4(b). If a party files such a motion, the time for appeal runs from the entry of the order disposing of the postjudgment motion. *Id.* R. 4(b)(1). Regarding motions to reconsider, the Utah Supreme Court has explicitly rejected the practice of filing postjudgment motions to reconsider and explained that "future filings of postjudgment motions to reconsider will not toll the time for appeal." *Gillett v. Price*, 2006 UT 24, ¶ 1, 135 P.3d 861. Thus, according to ERS, because the trial court considered Appellants' motion to amend the findings and judgment to be a motion to reconsider, Appellants had thirty days from June 27, 2014, when the trial court entered its final judgment, to appeal. Appellants filed their notice of appeal on October 13, 2014.

¶8    Appellants filed their postjudgment motion as a motion to amend the findings and judgment under rules 52 and 59 of the Utah Rules of Civil Procedure. Such motions toll the time for filing a notice of appeal. Utah R. App. P. 4(b); *see Gillett*, 2006 UT 24, ¶ 7 (suggesting that a postjudgment motion tolls the appeals period if it is "titled" as a motion that would toll the appeals period, "regardless of the motion's substance"). Further, nothing in the record suggests that Appellants filed the motion in bad faith or with knowledge that the trial court would recast it as a motion to reconsider. Accordingly, the record suggests that they reasonably believed the motion tolled the time for filing an appeal until the trial court disposed of the motion. *See* Utah R. App. P. 4(b). As previously discussed, the trial court initially disposed of Appellants' motion on September 18, 2014, and then corrected that order on October 31, 2014. Appellants filed their notice of appeal on October 13, 2014, within thirty days of the trial court's first order denying their motion. Consequently, although the trial court ultimately determined that Appellants'

motion was a motion to reconsider, we conclude that Appellants filed a timely notice of appeal when they filed their notice of appeal within thirty days of the trial court's September 18 order. We therefore address the merits of Appellants' arguments.

¶9 Appellants first contend that the trial court "failed to follow the law and applied an incorrect standard of proof when it granted judgment to [ERS] in quantum meruit without requiring the proofs necessary for such a recovery." According to Appellants, "[t]he lack of evidence on the specific services provided and their reasonable value is fatal to [ERS's] claim of entitlement to a remedy under a theory of quantum meruit," also known as unjust enrichment.

¶10 "Whether a claimant has been unjustly enriched is a mixed question of law and fact." *Desert Miriah, Inc. v. B & L Auto, Inc.*, 2000 UT 83, ¶ 9, 12 P.3d 580. We will uphold the trial court's findings of fact unless "the evidence supporting them is so lacking that we must conclude the finding is clearly erroneous." *Id.* (citation and internal quotation marks omitted). "Furthermore, we afford broad discretion to the trial court in its application of unjust enrichment law to the facts." *Id.* (citation and internal quotation marks omitted).

¶11 "Quantum meruit is an equitable tool that allows a plaintiff to receive restitution for the reasonable value of services provided to the defendant." *Emergency Physicians Integrated Care v. Salt Lake County*, 2007 UT 72, ¶ 10, 167 P.3d 1080. "Quantum meruit has two distinct branches—contracts implied in law and contracts implied in fact." *Jones v. Mackey Price Thompson & Ostler*, 2015 UT 60, ¶ 44, 355 P.3d 1000. The branch applicable to this case is contract implied in law. "Contract[] implied in law, also termed quasi-contract[] or unjust enrichment, is a doctrine under which the law will imply a promise to pay for goods or services when there is neither an actual nor an implied contract between the parties." *Id.* (citation and internal quotation marks omitted). To prove the existence of a contract implied in law, the plaintiff must establish that the defendant "(1) received a benefit,

(2) appreciated or had knowledge of this benefit, and (3) retained the benefit under circumstances that would make it unjust for the defendant to do so." *Id.* ¶ 45 (citation and internal quotation marks omitted).

¶12    In this case, the trial court observed that "both sides agree that Richard received valuable and necessary medical care that made him whole and Richard understood that he should pay for this care." And on appeal, Appellants concede that Richard "received some benefit from the care received following his accident," that "he had an appreciation or knowledge that he had received a benefit," and that "he received the benefit under circumstances that would make it unjust for him to retain the benefit without paying for it." Consequently, the parties agree that a contract implied in law exists.

¶13    They differ, however, on the existence—or at least the amount—of damages. Appellants contend that the "dispute is in [ERS] being unable to prove exactly what goods and services were provided to [Richard], or to prove the reasonable value of such." According to Appellants, there is no evidence in the record to support the amount of the trial court's judgment under quantum meruit. We disagree.

¶14    The Utah Supreme Court recently clarified "that when assessing damages for unjust enrichment, the court begins by looking to the value of the benefit conferred." *Jones*, 2015 UT 60, ¶ 57. Generally, the measure of recovery for an unjust enrichment or contract-implied-in-law claim "'is the value of the benefit conferred on the defendant (the defendant's gain) and not the detriment incurred by the plaintiff.'" *Id.* (quoting *Davies v. Olson*, 746 P.2d 264, 269 (Utah Ct. App. 1987)). However, "where the defendant has requested professional services, either directly or impliedly, the proper measure of the defendant's gain will normally be the reasonable value of the plaintiff's services." *Id.* ¶ 58. "In other words, in the case of professional services, the value of the benefit conferred is often the same as the value of the services rendered." *Id.*

¶15 In this case, in determining the value of UUHC's services, the trial court considered the trial testimony of UUHC's collections office supervisor and all of the billing information submitted at trial. The supervisor testified at trial that UUHC's "charges are based on . . . regional amounts that . . . all the other hospitals in the region bill from," and that the charges were therefore "medically reasonable." The supervisor also testified that UUHC gave Appellants a "30 percent contribution to care discount" because Richard was not insured.

¶16 In addition, the supervisor testified that the hospital assigned Richard two different account numbers—one ending in 21 (Account 21) and one ending in 90 (Account 90). Account 21 was for "charges associated with the hospital's facility," and Account 90 was for "charges associated with the different doctors." The trial court found that the first bill for Account 21 was issued on September 28, 2011, for $18,847.00, "and provides a breakdown of each of the hospital's department's portion of that bill." Indeed, the September 28 bill includes charges for various hospital departments, including anesthesiology, CT imaging, clinical laboratories, diagnostic radiology, "distro inventory," emergency room, general acute rehabilitation, "Medicine/Surgery Unit 6 North," pharmacy inpatient, respiratory therapy, surgical ICU, and trauma coordination. The bill also reflects the hospital's contribution to care discount of $8,077.47. The court noted that the next bill, dated October 30, 2011, added a $94.00 charge for "cardiac monitoring," bringing the total charge for Account 21 to $18,913.00. The October 30 bill also reflects UUHC's contribution to care discount of $28.20.

¶17 The trial court then found that the first bill for Account 90, dated October 2, 2011, contained a balance of $3,638.00 and was broken down by each doctor's charges.[5] Several additional

5. For example, one radiologist's bill includes charges for "Head/Brain CT Scan, Cervical Spine CT Scan, Lumbar Spine CT Scan, [and] Thoracic Spine CT Scan."

charges were added to the Account 90 bill on November 6, 2011, and on January 15, 2012, bringing the total charges for Account 90 to $6,829.00. Finally, the trial court found that a $469.00 charge for a chest tube insertion, dated July 7, 2012, some eight months after Richard's hospital stay, was "excessively late and unreasonable."

¶18 Ultimately, the trial court concluded that "all of the other charges are reasonable and customary for the services provided, and are presented with the requisite detail to provide the payer sufficient understanding." Therefore, the court ruled in favor of ERS in the amount of $25,742.00 ($18,913.00 for Account 21 and $6,829.00 for Account 90) plus statutory interest in the amount of $1,153.00, for a total judgment of $26,895.00.

¶19 Appellants do not challenge the trial court's computation of damages but, rather, "the value to Richard" of the necessary goods and services provided to him.[6] However, this is not the proper measure of damages because, as previously discussed, "where the defendant has requested professional services, either directly or impliedly, the proper measure of the defendant's gain will normally be the reasonable value of the plaintiff's services." *Jones v. Mackey Price Thompson & Ostler*, 2015 UT 60, ¶ 58, 355 P.3d 1000.

¶20 We conclude that the evidence was sufficient to support the trial court's findings regarding the reasonable value of UUHC's services. ERS submitted evidence, in the form of billing statements, that UUHC provided $25,742.00 worth of medical services to Richard. ERS also introduced testimony that established that the values UUHC placed on its services were "based on . . . regional amounts that . . . all the other hospitals in the region bill from" and that UUHC discounted its services for Richard because he lacked insurance. *Cf. Jones*, 2015 UT 60, ¶ 58

---

6. In any event, the record evidence supports the trial court's award calculation.

(observing that in contingency fee cases, "the best measure of the value of the benefit conferred upon the defendant law firm by the plaintiff lawyer's services is the value of those services as determined by the standards applicable to contingency fee cases in the legal community"). The trial court, sitting as factfinder, was free to accept ERS's evidence on the reasonable value of its services as sufficient.[7]

¶21     Therefore, we conclude that substantial record evidence supports the trial court's calculation of damages under quantum meruit for the reasonable value of UUHC's services provided to Richard. Consequently, we uphold the trial court's award of damages under quantum meruit.

---

7. Appellants' contention that "without an itemized statement, it is impossible to determine the reasonable value of the goods and services for which [ERS] seeks to recover" is without merit. Even if the billing statements could have been more specific regarding the charges, this court has previously observed that "'some degree of uncertainty in the evidence of damages will not relieve a defendant from recompensing a wronged plaintiff.'" *Richards v. Brown*, 2009 UT App 315, ¶ 41, 222 P.3d 69 (quoting *Highland Constr. Co. v. Union Pac. R.R. Co.*, 683 P.2d 1042, 1045 (Utah 1984)), *aff'd on other grounds*, 2012 UT 14, 274 P.3d 911; *see also Hale v. Big H Constr., Inc.*, 2012 UT App 283, ¶ 23, 288 P.3d 1046 (noting that on appeal the central inquiry is whether the evidence was sufficient and not whether it was perfect).

Moreover, although Appellants assert that "[i]t is undisputed that Richard never received an itemized statement for any of the goods and services for which he was billed," we have reason to doubt the veracity of this assertion. Indeed, the record contains forty-seven pages of itemized statements provided by *Appellants* in their initial disclosures to ERS. These itemized statements are specific and include the service date, code, description, quantity, and amount charged for the goods and services provided. Nonetheless, for whatever reason, these itemized statements were not provided to the trial court.

¶22   Next, Appellants contend that the trial court "failed to follow the law when it denied [Appellants'] rules 52(b) and 59(a) motions to amend the findings and judgment." According to Appellants, "there was insufficient evidence before the trial court . . . from which the court could reasonably make findings of fact necessary to support its judgment." "We review the [trial] court's denial of a motion to amend a judgment for an abuse of discretion." *In re B.O.*, 2015 UT App 70, ¶ 4, 347 P.3d 455 (per curiam).

¶23   Pursuant to rule 52 of the Utah Rules of Civil Procedure,

> [u]pon motion of a party made not later than 14 days after entry of judgment the court may amend its findings or make additional findings and may amend the judgment accordingly. The motion may be made with a motion for a new trial pursuant to Rule 59.

Utah R. Civ. P. 52(b). Rule 52(a) provides that "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." *Id.* R. 52(a). As previously discussed, the trial court's minute entry ruling specifically set forth the facts upon which the court relied in determining the judgment amount, and the court found that the charges to Appellants were "presented with the requisite detail to provide [Appellants] sufficient understanding." Because there was sufficient factual evidence submitted at trial to support the trial court's factual findings, we conclude that its findings are not "clearly erroneous." *See* Utah R. Civ. P. 52(a).

¶24   Similarly, rule 59 provides that a new trial may be granted if the evidence presented at trial was insufficient to "justify the verdict . . . or [the verdict] is against law." *Id.* R. 59(a)(6). Because we have determined that there was sufficient evidence to support the trial court's judgment, Appellants' rule

59 argument necessarily fails. Accordingly, the trial court did not abuse its discretion when it denied Appellants' motion to amend the findings and judgment.

¶25    The judgment of the trial court is affirmed.

———————